Joe SPIRITAS, Trustee, Appellant,

v.

Daniel P. ROBINOWITZ, Individually, and as Trustee, and First National Bank in Dallas, Appellees.

No. 19048.

Court of Civil Appeals of Texas, Dallas.

Nov. 12, 1976.

Rehearing Denied Dec. 16, 1976.

Harold Hoffman, Wynne & Jaffe, Dallas, for appellant.

A. L. Vickers, Ungerman, Hill, Ungerman, Angrist, Dolginoff & Teofan, Dallas, for Robinowitz.

G. R. Poehner, Coke & Coke, Dallas, for First National Bank.

AKIN, Justice.

This is an appeal by plaintiff Joe Spiritas, one of two joint venture owners of a tract of land, from an adverse judgment, rendered on a jury's verdict, that declared valid a second lien placed on the joint venture property by the other joint venturer, Daniel Robinowitz, and given to the First National Bank of Dallas as security for a $6,500,000 personal loan to Robinowitz. Additionally, this judgment denied Spiritas recovery against Robinowitz for breach of the joint venture agreement. By cross-points, the bank complains of an instructed verdict on its counterclaim seeking to hold Spiritas personally liable on Robinowitz's $6,500,000 note, although neither Spiritas nor the joint venturer's name appeared on the note.

The bank contends that its second lien on the joint venture property is protected by Tex.Rev.Civ.Stat.Ann. art. 7425b–8 (Vernon 1960), the Texas Blind Trust Act, and alternatively, that it is valid under Tex.Rev.Civ. Stat.Ann. art. 6132b, § 10(3) (Vernon 1970), of the Texas Uniform Partnership Act. Likewise, Spiritas argues that he should prevail under either statute. We hold that the Texas Blind Trust Act does not apply here because no trust was created; instead, we hold that article 6132b, § 10(3) of the partnership act governs. Since Spiritas had the burden of proof under § 10(3) and since he failed to submit and obtain jury findings necessary for him to prevail under § 10(3) of the act, we affirm the judgment with respect to the bank's lien. With respect to the take-nothing judgment against Robinowitz, we reverse and remand for a new trial because, although the jury's verdict will support a holding that Robinowitz breached the agreement, we are unable, from this record, to ascertain what damages have occurred. As to the counterclaim of the bank against Spiritas, we affirm because we hold that the bank has failed to plead and prove an action against Spiritas or the joint venture.

This controversy emanates from a joint venture agreement between Spiritas and Robinowitz which created an entity known as the "Collin 1040 Associates." The purpose of this venture was to purchase a tract of land known as the Tucker Tract. Robinowitz contributed his right under a contract of sale to purchase this tract, and Spiritas agreed to pay the carrying costs (taxes, assessments, interest, closing costs, etc.). The agreement was actually between "Spiritas, Trustee," and "Robinowitz, Trustee." This form was used to permit Spiritas to transfer part of his interest to family members and to allow Robinowitz to do likewise for employees, while limiting actual participation in the venture to the two men. The agreement provided that it should be governed by the Texas Uniform Partnership Act, unless otherwise indicated. It also specified that title to the property would be taken in the name of "Robinowitz, Trustee."

Acting upon this agreement and on behalf of the venture, Robinowitz and Spiritas

purchased the Tucker Tract for $7,000 an acre as a speculative investment. Title was taken in the name of "Robinowitz, Trustee." At the time the Tucker Tract was purchased, there was a land boom in the metroplex, and the parties anticipated that they would be able to sell the property in a short period of time for a substantial profit. The purchase price of the Tucker Tract was $7,136,700, of which $2,000,000 was paid in cash at the closing, and a promissory note, which was due on October 16, 1976, was executed for the remainder. This note was secured by the property only; neither venturer had personal liability on it. Approximately four months after the acquisition of the Tucker Tract, Robinowitz purchased an adjacent tract, known as the Underwood Tract. To finance this purchase, he borrowed $6,500,000 from the First National Bank in Dallas and secured the note with a first lien on the Underwood Tract and a second lien on the Tucker Tract. Although title to the Underwood Tract was likewise taken in the name of "Robinowitz, Trustee," the evidence is undisputed that Spiritas had no interest in this tract and the jury found that Robinowitz did not intend for the joint venture to have an interest in it. Robinowitz contends that the purchase of this tract was necessary in order to assemble a large enough block of land to make an attractive package to prospective buyers.

Due to the end of the speculative land boom, the venture has been unable to sell the Tucker Tract and Robinowitz is now in bankruptcy. Spiritas is suing (1) to have the second lien on the Tucker Tract canceled because the bank knew or should have known that Robinowitz did not have authority to grant the lien and, alternatively, (2) to recover from Robinowitz for any damages suffered by the joint venture due to Robinowitz's actions. The bank is counterclaiming against Spiritas on the ground that the $6,500,000 note is a joint venture obligation, and Spiritas is, therefore, liable to the bank for payment of the note.

The jury found as follows: That Spiritas did not expressly authorize Robinowitz to place the $6,500,000 lien upon the Tucker Tract; that Robinowitz did not intend for Spiritas to have any ownership interest in the Underwood Tract; that at the time of making the $6,500,000 loan, the bank did not know that Robinowitz did not intend for Spiritas to have an ownership interest in the Underwood Tract; that the bank, at the time of the making of the $6,500,000 loan to Robinowitz, knew that Spiritas had an interest in the Tucker Tract; that the act of the bank in placing a lien upon the Tucker Tract was not a wilful and malicious act resulting in injury to Spiritas; that the act of Robinowitz in placing the second lien upon the Tucker Tract was not a wilful and malicious act resulting in injury to Spiritas; that within twenty-one days of the time Spiritas first learned that Robinowitz had placed the $6,500,000 lien upon the Tucker Tract, Spiritas gave written notice to Robinowitz to have the lien removed; that after Robinowitz failed to remove the lien from the Tucker Tract, Spiritas gave an additional written notice to Robinowitz demanding that the lien be removed; that the market value of the Tucker Tract on March 28, 1974, not considering the liens against it, was $7,000 per acre; that the market value of the Tucker Tract at the date of trial, not considering the liens against it, was $7,000 per acre; that the placing of the $6,500,000 lien on the Tucker Tract was not reasonably necessary or fit for carrying on a usual way of business of the joint venture composed of Robinowitz and Spiritas; that Robinowitz had apparent authority from the joint venture to grant the $6,500,000 lien to the bank; that Robinowitz did not have implied authority from Spiritas to grant the lien to the bank; and that the use of the $6,500,000 loan proceeds by Robinowitz was pursuant to his good faith and belief that its use in purchasing the Underwood Tract was in the best interest of the joint venture. Acting upon these answers of the jury to the special issues, the trial court rendered the judgment from which Spiritas appeals.

### 1. Standing

Both Robinowitz and the bank have challenged Spiritas's standing to bring this

action on his own behalf based upon the rule that where individual parties bring suit to enforce a partnership right, the suit should be in the name of all of the partners. *Roberson v. McIllhenny, Hutchins & Co.,* 59 Tex. 615 (1883). The purpose of this rule is, however, to protect third parties from the possibility of multiple actions and recoveries. *Edmondson v. Carroll,* 65 S.W.2d 1107, 1108–09 (Tex.Civ.App.—Fort Worth 1933, writ dism'd); *cf. Taylor v. Republic Grocer,* 483 S.W.2d 293, 295 (Tex.Civ.App.—El Paso 1972, no writ). Since both partners are parties to the lawsuit, this rule has no application here.

### 2. *Spiritas's Action Against the Bank*

■ The bank argues that its second lien on the Tucker Tract was protected by the Blind Trust Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–8 [1] (Vernon 1960) which states:

> *Where a trust is created,* but is not contained or declared in the conveyance to the trustee, or when a conveyance or transfer is made to a trustee without disclosing the names of the beneficiary, or beneficiaries, the trustee shall be held to have the power to convey or transfer or encumber the title and whenever he shall execute and deliver a conveyance or transfer or encumbrance of such property, as trustee, such conveyance or transfer or encumbrance shall not thereafter be questioned by any one claiming as a beneficiary under such trust or by any one claiming by, through, or under an undisclosed beneficiary, provided that none of the trust property in the hands of said trustee shall be liable for personal obligations of said trustee. [Emphasis added.]

Because no trust concerning the property was actually created, this act is inapplicable. As a prerequisite to the application of the Blind Trust Act, the trust claimed must fall within the ambit of article 7425b–7 entitled "Requisites of a Trust." This statute expressly refers to ways in which an "express" trust may be created. Nothing within article 7425b–7 includes a partnership agreement where one of the partners takes title to the partnership property in his name as "trustee." Designation of a party as "trustee" does not in itself create a trust. *Costello v. Hillcrest State Bank,* 380 S.W.2d 780, 782 (Tex.Civ.App.—Dallas 1964, no writ).

■ To create a trust, the beneficiary must be identified with certainty. *Unthank v. Rippstein,* 386 S.W.2d 134, 136 (Tex.1964). In the joint venture agreement, the requirement that Robinowitz take title as trustee does not show, with certainty, an intent that the venture property be held in trust for the venture as distinguished from the common situation in which one partner holds title for the benefit of the partnership. This is true because one of the partners was "Robinowitz, Trustee." This designation was made because the parties contemplated that Robinowitz would act for the benefit of certain employees to be named later. Since the venture agreement does not state that "Robinowitz, Trustee" was to take title in a capacity of trustee for the joint venture rather than as "Robinowitz, Trustee," one of the partners, we conclude that the agreement does not create an additional trust for the benefit of the venture. On the contrary, the agreement provides that the relationship of the parties is to be governed by the Texas Uniform Partnership Act. We cannot impose a trust where parties have contemplated another relationship. G. Bogert, Trusts & Trustees, § 45 at 316 (2d ed. 1965). Thus, the use of "trustee" in the deed is merely a description and without legal effect. It is as if title were in Robinowitz individually. *Barker v. Temple Lumber Co.,* 12 S.W.2d 175, 180 (Tex.Com.App.1929), *rev'd on other grounds,* 120 Tex. 244, 37 S.W.2d 721 (1931); *Annot.* 137 A.L.R. 460, 462–65 (1942). We conclude that the Texas Blind Trust Act has no application here, and that article 6132b, § 10(3) of the Texas Uniform Partnership Act, Tex.Rev.Civ.Stat.Ann. art.

---

1. The wording of article 7425b–8 is identical to that of its predecessor, article 7425a, which has never been repealed, although it is included within the Texas Trust Act. Presumably, the legislature intended for it to be construed together with other provisions of the act.

6132b (Vernon 1970) governs, as both the bank and Spiritas alternatively contend.

The parties differ, however, in their construction of art. 6132b, § 10(3). That statute states:

> Where title to real property is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, *but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of paragraph (1) of Section 9,* unless the purchaser or his assignee, is a holder for value, without knowledge. [Emphasis added.]

Section 9, paragraph 1 provides:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, *for apparently carrying on in the usual way the business of the partnership* of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. [Emphasis added.]

■ Spiritas and the bank each take the position that judgment in its favor was required under this statute, but each relies upon a different jury finding. Spiritas argues that he is entitled to judgment under § 10(3) because of the jury's answer to this issue:

> No. 14 Do you find that the grant of the $6,500,000 lien in question to the First National Bank in Dallas was *reasonably necessary or fit* for carrying on in the usual way the business of the joint venture composed of Robinowitz and Spiritas? [Emphasis added.]
>
> Answer: We do not.

He contends that this is a finding that Robinowitz's act in granting the second lien was not carrying on in the usual way the business of the partnership and that, therefore, Robinowitz's act did not bind the part-

nership; hence, the partnership was entitled to recover the property (remove the lien given).

The bank contends that it is entitled to judgment under § 10(3) because of the jury's answer to issue number sixteen as follows:

> No. 16 Do you find that Robinowitz had *apparent authority* from the joint venture to grant the $6,500,000 lien to the First National Bank in Dallas? [Emphasis added.]
>
> Answer: We do.

The bank argues that this answer is tantamount to a finding that Robinowitz's act of granting the lien was "for apparently carrying on in the usual way the business of the partnership." Spiritas replies that § 10(3) supplants the common law standard of apparent authority by a more specific statutory standard. Although we are inclined to agree with Spiritas in this respect, we do not reach the question of whether the jury's answer to issue number sixteen requires judgment for the bank. If common law apparent authority, as submitted in issue number sixteen, is not controlling, no other apparent authority issue has been submitted. Issue number fourteen is not the statutory apparent authority issue because it omits the controlling word "apparently." The words "reasonably necessary or fit," as used in the issue, are not equivalent because they do not take into consideration the perspective of the bank's employees who dealt with Robinowitz. Consequently, this issue did not submit, even approximately, the ultimate fact issue under the statute. Common law apparent authority, as submitted in issue number sixteen, is a nearer approximation of the issue than is issue number fourteen. If judgment for the bank is not supported by the answer to issue number sixteen, then neither can a judgment for Spiritas be rendered on the basis of issue number fourteen.

■ Since the proper issue was not submitted, we must determine the effect of the absence of this essential fact finding. Spiritas argues that the burden of proof on the ultimate issue of whether Robinowitz's act

was "apparently carrying on in the usual way of business of the partnership" was on the bank because it was an affirmative defense. We cannot agree. The burden of proof was on Spiritas because he was attempting to assert an interest contrary to the title records on which purchasers and creditors are normally entitled to rely. This interpretation of the act is supported by Professor Alan R. Bromberg in the Source and Comments to Section 10 where he states:

> Paragraphs (3) to (5) cover situations where legal title is not in the partnership but in one or more of the partners individually. Paragraph (3) resembles paragraph (1) in recognizing the passage of legal title. But it goes farther and *places the burden on the partnership* in a contest with the grantee (and not just with a bona fide purchaser from the grantee). This is reasonable because, by hypothesis, the deed records will show legal title exclusively in the persons who convey. This provision facilitates the use of nominees to hold partnership realty. [Emphasis added.]

This comment by Professor Bromberg is both logical and equitable. Spiritas permitted Robinowitz to hold legal title to the partnership property and should, therefore, have the burden of proving, in a suit to recover the partnership property from a third party (bank), that the act of Robinowitz in placing the lien on the partnership property was not apparently carrying on in the usual way the business of the partnership. *See* Crane and Bromberg on Partnership § 49, at 275 (1968).

Since we have held that Spiritas had the burden of proof under § 10(3) and since he did not request the proper issue in statutory language, a determination of this question by the jury has been waived by him. Consequently, he cannot now complain because judgment was not rendered in his favor on this issue. Tex.R.Civ.P. 279; *Gasperson v. Christie, Mitchell & Mitchell,* 418 S.W.2d 345, 349 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.).

### 3. *The Bank's Counterclaim Against Spiritas*

■ The bank argues that the trial court erred in granting an instructed verdict on its counterclaim against Spiritas on the $6,500,000 note. The note was executed by Robinowitz, trustee, and at the time it was given, the bank did not know whether Robinowitz was acting for himself or some unknown third party. Nevertheless, the bank urges that, because of the jury finding of apparent authority to grant the lien, the underlying note is necessarily a joint venture obligation, and, therefore, Spiritas is personally liable. We cannot agree. The bank did not plead this theory as a basis of recovery against Spiritas. On the contrary, the bank pleaded that it did not know that Robinowitz was acting for the joint venture, but that Robinowitz had actual authority to incur the indebtedness on behalf of the venture. The evidence is, however, to the contrary. The joint venture agreement expressly prohibited Robinowitz from incurring indebtedness on behalf of the venture in excess of $5,000 without Spiritas's consent. Likewise, the bank's pleadings state that the loan was for the joint venture's benefit; however, the evidence is that it was solely for Robinowitz's benefit as found by the jury. The bank cannot, therefore, rely upon a ground of recovery neither pleaded nor proved. The bank's argument, even if pleaded, is fallacious because a finding that Robinowitz had apparent authority to grant the lien is not tantamount to a finding that he had apparent authority to execute the $6,500,000 note. Consequently, we conclude that the trial court correctly instructed a verdict against the bank with respect to its counterclaim against Spiritas.

### 4. *Spiritas's Action Against Robinowitz*

■ Acting on the jury finding that Robinowitz acted in "good faith" in placing the second lien in favor of the bank on the Tucker Tract, the trial court rendered judgment that Spiritas take nothing against Robinowitz. In support of the court's action in this respect, Robinowitz contends that the joint venture agreement provides that

he has no liability for actions taken as manager of the venture due to its exculpatory clause, which reads:

> The Manager of the Venture shall perform his duties under this Agreement with ordinary prudence and in a manner characteristic of a businessman in similar circumstances; but said Manager shall not have any liability whatsoever to the Venture, or to any Venturer, for any loss suffered by the Venture which arises out of any mistake in judgment of said Manager or if said Manager, determined that such conduct was *in the best interest of the Venture,* or if said Manager acted, *in good faith based on the advice of independent counsel.* [Emphasis added.]

Robinowitz contends that, since the jury found he was acting in "good faith" in granting the lien, he is not liable for any resulting loss. We cannot agree because this provision applies only to the "good faith" performance of "his duties under this agreement." The basis for his liability to Spiritas is that he acted outside the scope of his power under the agreement. Consequently, the jury finding of "good faith" is not a valid defense to the breach of the agreement by Robinowitz. Indeed, as managing partner, he owed Spiritas one of the highest fiduciary duties recognized in law. *Huffington v. Upchurch,* 532 S.W.2d 576, 579 (Tex.1976). Thus, we are presented with the question of whether Robinowitz breached the agreement by granting the lien. His authority to grant a lien on the venture property is governed by articles 10 and 11 of the agreement. Article 10, entitled "Manager of the Venture," provides:

> The responsibilities of the Manager of the Venture in addition to any provided for above include but are not limited to the following:
>
> (a) Conducting the business of the Venture in the ordinary course of its business including negotiation and execution of all contracts, loans, and leases
>
> .    .    .    .    .
>
> (f) Signing any notes, mortgages and other agreements and performing any acts which may be necessary or expedient

to carry out the purposes of this agreement    .    .    . .

Article 11, entitled "Management and Control," provides:

> *Subject to the provisions of Article 10,* the Venturers hereby delegate to the Manager of the Venture the responsibility for the day-to-day management, ministerial acts and other herein provided acts of the Venture. All other affairs of the Venture including the following shall be decided by unanimous vote of the Venturers *unless otherwise provided or permitted herein,* to-wit:
>
> .    .    .    .    .
>
> (c) To execute or modify any mortgage, pledge, or other security agreement or encumbrance affecting the Property;
>
> (d) To make any capital improvement or incur any debt or obligation the cost of which shall exceed Five Thousand Dollars, or to initiate any program of capital improvements;
>
> .    .    .    .    .
>
> (f) To execute any bonds, guaranty, indemnity or accommodation endorsement;
>
> .    .    .    .    .
>
> (h) To any act in contravention of this Agreement or to amend this Agreement. [Emphasis added.]

Robinowitz would have us read the phrases "subject to the provisions of article 10" and "unless otherwise provided or permitted herein" in article 11 to mean that his activities in granting the lien are within his power as manager and should, therefore, be subject to the "good faith" exculpatory clause. However, as we read the agreement, the provisions of article 11 are not controlled by the provisions of article 10. The "subject to" clause must be read in conjunction with the remainder of the sentence of which it is a part. That sentence is an affirmative grant of routine power, as previously limited and defined by article 10. This shows clearly that article 11 is intended to control over article 10. Nor does the "unless otherwise provided" clause require that article 10 control. The basic rule of contract construction is that all parts of the

agreement are intended to have some meaning, *Fruhman v. Nawcas Benevolent Auxiliary,* 436 S.W.2d 912, 915 (Tex.Civ. App.—Dallas 1969, writ ref'd n. r. e.), and they must be given some meaning unless necessarily repugnant to another contract clause. *Williams v. J. & C. Royalty Co.,* 254 S.W.2d 178, 179 (Tex.Civ.App.—San Antonio 1952, writ ref'd). To read article 10(a) and (f) as giving Robinowitz absolute discretion, subject only to good faith judgment, to take out loans and encumber the property would be to render article 11(c), (d), (f) and (h) meaningless. As we read this language, the "subject to" clause refers to specific exceptions to the unanimous consent rule. These exceptions are stated elsewhere in the contract, such as article 6(d)(3)(b)(ii), which authorizes Robinowitz to sell property on any terms he chooses provided that Spiritas is given a ten-day option to purchase the property on identical terms.

■ In support of his interpretation of this language, Robinowitz urges the rule that, if two provisions of a contract are conflicting, the provision which appears first controls. This is, however, a secondary rule of construction that is resorted to only if there is an irreconcilable conflict between the provisions. *Benskin v. Barksdale,* 246 S.W. 360, 363 (Tex.Com.App.1923, holding approved); *see Southland Royalty Co. v. Pan American Petroleum Corp.,* 378 S.W.2d 50, 57 (Tex.1964). Where the court can reasonably harmonize apparently conflicting provisions, it should do so. *Southland Royalty, supra* at 57.

Thus, as we read the agreement, article 11 requires that unanimous consent be given before debts over $5,000 can be incurred or before a mortgage can be executed on the property; article 10 provides that Robinowitz will negotiate the terms of a loan or mortgage with the lender, subject to the approval of Spiritas, and that Robinowitz will sign instruments on behalf of the venture. The jury's finding that Spiritas did not expressly authorize Robinowitz to place the lien on the property establishes that Robinowitz's act was a breach of agree-

ment. The jury also found that, in so doing, Robinowitz was guilty of misappropriation, which was defined by the court as "intentionally using the property of another person for his own purposes, without the other's consent or permission amounting to a *known breach of duty* and not to mere negligence or mistake." [Emphasis added.] Accordingly, we conclude, and so hold, that Robinowitz is liable to Spiritas for any damages that may flow from this breach. In view of this holding, we would render judgment for Spiritas if we could ascertain the damages suffered by Spiritas as a result of Robinowitz's wrongful act in placing the second lien on the joint venture property.

■ Spiritas argues that since breach of the agreement by Robinowitz has been established by the verdict, we should render judgment against Robinowitz in the amount of $1,026,211.50, which he claims is his equity in the property. His contention is that, since the jury found that the property was worth $7,189,000 at the time Robinowitz imposed the second lien on the property, the $6,500,000 second lien in addition to the $5,136,577 first lien rendered valueless his equity because the entire tract cannot be sold for $11,600,000 to satisfy both liens.

The fallacy of this argument is that it assumes that the second lien will not be discharged by any method other than the sale of the Tucker Tract. The $6,500,000 note is secured by the Underwood Tract as well as the Tucker Tract, and the value of the Underwood Tract is not established. Consequently, insofar as this record shows, the Underwood Tract may be sold for sufficient funds to satisfy the second lien. Likewise, since this note is a personal obligation of Robinowitz, it is possible that funds may be forthcoming from Robinowitz's bankrupt estate to satisfy or reduce the note secured by the second lien. Because there is no showing that the lien will necessarily be foreclosed against the Tucker Tract, we are not certain that Spiritas has suffered any pecuniary damage at this time. In the event that the lien is discharged in some other manner, Spiritas will be in the same

position with respect to the venture property as he was prior to the imposition of the lien except for the expenses incurred by him in this litigation. Nor does this record show that the joint venture has lost a sale of the Tucker Tract because of the existence of the bank's lien. Consequently, damages due to the breach are at this time speculative and will be so until Spiritas suffers some ascertainable loss caused by the existence of the lien. A contingency which cannot be determined with reasonable certainty cannot be made the basis for recovery of a definite amount of damages. *Reilly v. Birmingham,* 53 S.W.2d 825, 826 (Tex.Civ.App.—Austin 1932, writ dism'd w. o. j.). Nevertheless, it is obvious that Spiritas has a substantial risk of incurring large damages as a result of Robinowitz's wrongful act and that events may ripen these potential damages so that he may be able to prove them at a subsequent trial. For these reasons, we reverse and remand this cause. *Cf. Travelers Insurance Co. v. Employers Casualty Co.,* 380 S.W.2d 610, 615 (Tex.1964). On another trial, perhaps the amount of damages can be more definitely established. Since the liability issues are contested by Robinowitz, the entire cause with respect to the controversy between Robinowitz and Spiritas must be remanded for a new trial. Tex.R.Civ.P. 434.

### 4. Jury Strikes

Spiritas complains of the trial court's granting six jury strikes to each defendant. This would be error if it was evident to the trial court, from the pleadings and information disclosed by pretrial procedures or from information specifically called to the court's attention, that the defendants were not antagonistic in relation to any questions to be decided by the jury. *Perkins v. Freeman,* 518 S.W.2d 532, 534 (Tex.1974). However, the supreme court, in *Tamburello v. Welch,* 392 S.W.2d 114, 117 (Tex.1965), held that denial of jury strikes is subject to the harmless error rule. We conclude that the error here, if any, was harmless in view of our disposition severing and affirming the action against the bank and remanding the cause against Robinow-

itz on other grounds. The action against the bank does not require remand on this point, even if error, because the judgment for the bank is based upon a waiver by Spiritas of his theory of recovery under article 6132b, § 10(3) rather than on jury findings. Under article 6132b, § 10(3) the jury question necessary to defeat the bank's lien was not requested by Spiritas or submitted by the court. Consequently, any error in granting each defendant six jury strikes was harmless with respect to the judgment for the bank.

### 5. Robinowitz's Cross-Points with Respect to Evidentiary Rulings

Robinowitz has several cross-points of error relating to evidentiary matters which were intended apparently to prevent this court from reversing and rendering judgment for Spiritas. In view of our decision to remand on other grounds, we address these points as guidance for the trial court in the event of another trial.

Robinowitz first complains of the trial court's refusal to permit his counsel to inspect a memorandum used by the witness Davidoff to refresh his memory prior to entering the courtroom to testify. No objection was made by Spiritas's counsel on the ground that the memo was used by the witness out of court; consequently, we need not address the question of whether opposing counsel is entitled to inspect documents used outside of the courtroom to refresh a witness's memory prior to testifying. An objection was made, however, on the ground that the memo contained privileged information in addition to that which was the basis of the witness's testimony. Spiritas's counsel then prepared an edited version of the memorandum for opposing counsel's use and offered to let the trial court compare it to the original to determine if any relevant material had been deleted. The trial court declined to inspect the original and ruled that Robinowitz's counsel would be allowed to see only the edited version. The trial court also denied a request by Robinowitz's counsel to have the

original memorandum sealed and transmitted to this court for use in reviewing the ruling. We hold that the trial court had a duty to personally inspect the original before making its ruling and to permit opposing counsel to see any relevant and material portions of the memorandum which were not privileged. *See Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (1959). Furthermore, the better practice in this situation is for the trial court to have the original sealed and transmitted to this court for use on appeal. *See Dobbins v. Gardner,* 377 S.W.2d 665, 669 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.).

■ Robinowitz also contends that the trial court erred in excluding certain evidence pertaining to joint venture expenditures made by Spiritas for the purpose of running cattle on the joint venture property. He argues that this evidence should have been admitted to show a prior breach of the joint venture agreement by Spiritas. In support of this contention, he cites cases such as *Gulf Pipe Line Co. v. Nearen,* 135 Tex. 50, 138 S.W.2d 1065, 1068 (1940), and *Jessen v. LeVan,* 161 S.W.2d 585, 586 (Tex. Civ.App.—El Paso 1942, no writ). These decisions concern the breach of a condition precedent or a concurrent condition. They are not applicable here because we do not find any evidence of a breach of a condition precedent to the duties of Robinowitz as a managing partner. Furthermore, Robinowitz did not refuse to pay the bills incurred by Spiritas and, therefore, his right to assert any such breach as relieving him of his obligations as managing partner has been waived.

■ Robinowitz also urges that this testimony should have been admitted to show the procedures by which the parties consented to activities which were required to be authorized by unanimous vote. We fail to see how the jury could logically infer, from the excluded evidence concerning an alleged oral modification of the agreement to permit the cattle operation on venture property, that the agreement had also been orally modified to give Robinowitz authority to place a lien on the property for his

individual benefit. We conclude, therefore, that this excluded testimony was irrelevant and, therefore, properly excluded by the trial court. *Pittman v. Baladez,* 158 Tex. 372, 312 S.W.2d 210, 216 (1958).

■ Robinowitz also argues that the trial court erred in excluding evidence concerning a $613,334 note which Spiritas allegedly owed Robinowitz in connection with another venture. Robinowitz does not plead this note as an offset to Spiritas's claim against him. Rather, he contends that the note is relevant because of an agreement between the parties that this note would become due and payable only upon the return of a certain $1,000,000 certificate of deposit which Spiritas had deposited with a New Orleans bank in order to secure the $2,000,000 loan for the down payment on the Tucker joint venture property. He reasons that, since Spiritas was allowed to testify that he put up the certificate of deposit as security for the $2,000,000 loan, Robinowitz should be allowed to show that his loan was subject to the terms of the certificate of deposit, thereby indicating that Robinowitz, as well as Spiritas, stood to suffer a loss if the property was lost. He contends, therefore, that it was more likely that Spiritas would authorize the lien to the bank. We fail to see what relevance this evidence bears on the question of whether Robinowitz had authority to encumber the property. We conclude, therefore, that it was properly excluded. *Dallas Ry. & Terminal Co. v. Oehler,* 156 Tex. 488, 296 S.W.2d 757, 759 (1956). The evidence pertaining to the $1,000,000 certificate of deposit was, however, relevant to the question of damages; likewise, had Robinowitz asserted an offset, the $613,334 note would have been relevant.

■ Robinowitz next contends that evidence of the $613,334 note was admissible for impeachment purposes because Spiritas's son, Steve, testified that he told officers of other banks that the Spiritas family did not have any outstanding loans when in fact they did owe the note to Robinowitz. We cannot agree because these discussions which the witness had with officials of oth-

er banks relating to the indebtedness of the Spiritas family are collateral matters not subject to impeachment. *Christi v. Brewer,* 374 S.W.2d 908, 914 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.). We conclude, therefore, that this evidence was properly excluded by the trial court.

■ Robinowitz's final contention is that all statements made by the parties after January 1, 1975, are inadmissible because the parties were engaged in settlement negotiations. We cannot agree. The law does not support such a broad conclusion. To the extent that any statements constitute an admission of liability, they are admissible even though made in the context of settlement negotiations. *Charter Oak Fire Insurance Co. v. Adams,* 488 S.W.2d 548, 550 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.). It is the offer of compromise that is protected; an admission of liability will be excluded only if it is so entwined with the compromise offer that the trial court is unable to determine whether it was made as a statement of fact or as a concession for purposes of negotiation. *Merchants' Cotton Oil Co. v. Acme Gin Co.,* 284 S.W. 680, 682 (Tex.Civ.App.—Eastland 1926, no writ); 2 C. McCormick & R. Ray, Texas Evidence, § 1142 (2d ed. 1956).

Accordingly, the judgment of the trial court with respect to the validity of the second lien held by the bank is affirmed; likewise, the action of the trial court in instructing a verdict against the bank on its counterclaim against Spiritas is also affirmed; and both of these causes are hereby severed and made final. That part of the trial court's judgment denying Spiritas recovery against Robinowitz is reversed and remanded. Costs are hereby taxed fifty percent to Robinowitz and fifty percent to Spiritas.