Affirmed as Modified and Opinion filed June 30, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00351-CV

___________________

 

Raymond H. Stauffacher, Jr., Appellant

 

V.

 

Coadum Capital Fund 1, LLC,
Appellee



 



 

On
Appeal from the 165th District Court

Harris County,
Texas



Trial Court Cause No. 2006-76967

 



 

 

OPINION

This case involves alleged breaches of a joint-venture
agreement between appellant Raymond H. Stauffacher, Jr., and Coadum Capital
Fund 1, LLC.  The jury found Stauffacher breached both the agreement and his
fiduciary duty to Coadum, and awarded Coadum damages and attorney’s fees.  The
trial court rendered judgment on the verdict and ordered prejudgment interest
and conditional appellate attorney’s fees.  

On appeal, Stauffacher
argues the trial court erred by failing to conclude as a matter of law that
Stauffacher was a trustee and not individually liable on the contract he signed
with Coadum.  Stauffacher argues this position through three separate issues,
in which he contends the trial court erred by (1) overruling his objection to
the submission of a jury question on whether Stauffacher individually breached
the joint-venture agreement; (2) denying his motions to disregard findings and
for judgment notwithstanding the verdict; and (3) rendering judgment against
Stauffacher individually.  Stauffacher also argues the trial court erred by failing
to disregard the jury’s finding that Stauffacher breached a fiduciary duty owed
to Coadum because as a matter of law Stauffacher was not a fiduciary, and
because no evidence supported the jury’s finding.  Stauffacher further contends
the trial court erred by failing to disregard the jury’s award of damages for
breach of fiduciary duty on the grounds that there is no evidence Coadum
suffered any injury separate from economic losses recoverable under its
breach-of-contract claim.  We agree that there is no evidence separate from the
economic losses suffered under a breach-of-contract theory to support the
$56,025 recovery for breach of fiduciary duty, and modify the trial court’s
judgment accordingly.  We affirm the remainder of the trial court’s judgment.    

I

This dispute arises out of a joint venture among LOBO
International, A.G., Coadum Capital Fund 1, LLC., and Raymond Stauffacher,
president of LOBO and allegedly a “trustee” under the joint-venture agreement. 
In December 2005, one of Stauffacher’s associates, George Ober, contacted
Coadum to promote an invitation-only investment-trading program supposedly
offered only to “sophisticated investors.”  Under the program, third parties in
Switzerland would invest Coadum’s funds in non-public trading of “medium-term
notes” in the European market.  Ober allegedly represented that the program
included “guaranteed principal protection” and “above average returns.”  

Coadum’s representatives met with Stauffacher, who
allegedly represented he had focused his law practice on the program for the
past eight years and that the program would yield tremendous profits without
risk.  Thomas Repke, vice president of Coadum, testified Stauffacher told him
and Coadum president James Jeffrey that the principal invested in the program
would not be at risk because it would be placed in an account under
Stauffacher’s exclusive control, and because stock equivalent to the
investment’s market value would be secured from a major international bank.  

A “joint venture agreement” between the two entities was
signed on April 17, 2006.  James A. Jeffrey signed the agreement “Individually
and as President” of Coadum, and Stauffacher signed as “Trustee & As
President” of LOBO.  The agreement specifies that the two entities “have agreed
to and hereby undertake a joint venture for profit . . . which involves the
trading of various financial instruments by professional traders, working with
Trade Banks, that trade in the purchase and/or sale of notes, bank guarantees
and/or debentures and other similar financial documents, instruments, or
assets.”  Repke testified that LOBO “had to be involved because Mr. Stauffacher
was already an accepted client investor, investment representative with the
European banks and European trading firms.”  Accordingly, the agreement calls
for Coadum to “make available to LOBO for use as a Joint Venture investment
program funds in the original principal amount of $1,000,000,” which would be
“invested and transferred by TRUSTEE to the Trading Bank for utilization in the
trading program.”  The agreement provides that the trustee will transfer the
funds to the trading bank to be maintained “for the joint venture under the
name and sole control” of the trustee, who would also serve as the account’s
beneficiary.  The funds were required to be secured by bank stock having “the
same market value as the investment funds.”  The agreement further provides for
regular payouts to Coadum as the investment bears profit.  

On April 25, 2006, Stauffacher sent a document
entitled “Letter of Intent / Request for Services” to Pureheart Investments,
LTD.  In the letter, Stauffacher requested “participation in a private banking
opportunity through a private placement of said assets owned free and clear by
me.”  Stauffacher signed the letter “individually and on behalf of himself,”
although a bank account referred to in the letter is named “Raymond H.
Stauffacher, Trustee.”  Also dated on April 25, 2006 is a “joint venture
agreement” between Pureheart and Stauffacher and a “Pay Out Account” signed by
Stauffacher.  Again, Stauffacher signed both documents “on behalf of himself,”
although both documents list the same bank account with a “trustee”
designation.  An “outgoing wire transfer request” from Compass Bank and an
“Acknowledged Currency” receipt from UBS reflect the transfer of $1 million
from Stauffacher’s “trustee” account to Pureheart in early May 2006.  

Stauffacher became aware as early as June 2006 that
the program was not generating a profit.  In an e-mail sent to Dr. C. Dremmel
of Pureheart, Stauffacher wrote:  “What is happening is not clear, but it is
certain that this is not even nearly performing as represented . . . . 
The failure of these two ventures will result in substantial loss of profits to
everyone involved . . . .  [W]hoever is in control of these ventures is about
to really screw them up and lose both of them . . . .”  

Repke testified Stauffacher never told him or Jeffrey
that Coadum’s funds had been invested with Pureheart.  Rather, Repke testified
that by May 2006, he and his partner “started to wonder when stock was going to
be transferred” and were “really in the dark as to what was going on, if
anything.”  Repke testified that Stauffacher told him and Jeffrey that “[t]hese
things don’t get set up overnight” and attributed delays to a “bureaucratic
chain.”  By early June 2006, Stauffacher told Repke “we were down to one last
signature requirement, and there was one person holding it up, and they
expected his signature at any moment, and the stock would be issued and the
trading line would be effected.”  Repke testified Stauffacher never told him
the funds were already invested and not performing as intended, instead leading
Repke and Jeffrey to believe that issuance of the stock was imminent.  In an
email dated June 9, 2006, Ober wrote to Repke and Jeffrey, “Be assured, the
funds have not been misused or misplaced.”  Repke testified Ober and
Stauffacher orally repeated that assurance. 

In late June or early
July, Repke and Jeffrey demanded a return of Coadum’s principal, and Stauffacher
promised to return it by July 17.  When Stauffacher failed to return the funds
by then, he promised a report by August 4 outlining when and where the funds
would be returned.  Repke testified Stauffacher was “extremely vague with me on
where the money was and how he was getting it back.”  Evidence showed that
$585,000 of Coadum’s principal was returned to Stauffacher in October 2006, but
Repke testified Stauffacher never mentioned the returned funds.  After Coadum
filed suit against Stauffacher, Stauffacher returned $585,000 to Coadum.     

The jury found that
Stauffacher failed to comply with the joint-venture agreement and awarded
breach-of-contract damages of $415,000.  The jury was asked separately if
Stauffacher failed to comply with his fiduciary duty to Coadum.  The jury
answered that Stauffacher had breached his fiduciary duty and awarded Coadum $56,025
in damages for the breach.

II

            The
essence of Stauffacher’s first, second, and fourth issues is that the trial
court erred in concluding he was not acting at all times as a trustee, and
therefore could not be held individually liable.  In his first issue, he
contends the trial court erred by submitting Question 1-a, asking if
Stauffacher failed to comply with the joint-venture agreement.  In his second
issue, he argues the trial court erred by denying his motions to disregard
findings and for judgment notwithstanding the verdict, both of which were based
on the jury finding that Stauffacher individually breached the agreement.  And
in his fourth issue, Stauffacher maintains the court erred in entering judgment
against Stauffacher individually because at all times Stauffacher acted in the
capacity of trustee. 

The parties agree that “a
plaintiff may sue a ‘trustee individually if the trustee made the contract and
the contract does not exclude the trustee’s personal liability.’”  Anzilotti
v. Gene D. Liggin, Inc., 899 S.W.2d 264, 267 (Tex. App.—Houston [14th
Dist.] 1995, no writ) (quoting Tex. Prop. Code § 114.084(a)).  Stauffacher further
argues that the addition of “as trustee” after his signature is prima facie evidence
of an intent to exclude the trustee from personal liability; indeed, section
114.084(b) of the Property Code says as much.  Nevertheless, as Coadum
correctly points out, section 114.084 governs only third-party claims, and
there is no third-party claim in this case.  Although Coadum’s position is that
the joint-venture agreement did not create a trust, it points out that a trustee’s
liability to a beneficiary is set out in section 114.001 of the Property Code,
which does not include a provision that signing a document “as trustee” is prima
facie evidence of an intent to exclude personal liability.  

            We
agree that section 114.084 does not control claims such as this one.  If
Stauffacher were correct that the joint-venture agreement created a trust, the
dispute in this case would involve Stauffacher as trustee and Coadum as settlor
and beneficiary.  Stauffacher’s liability to Coadum as trustee, if any, would
exist in the framework of section 114.001 of the Property Code.  

A trust is created only
if the settlor manifests an intention to create a trust.  Tex. Prop. Code
§ 112.001.  With the settlor’s intent as the touchstone of a proper analysis,
there are five statutory methods for creating a trust:

(1)  a property owner’s declaration that the owner holds
the property as trustee for another person;

(2)  a property owner’s inter vivos transfer of the
property to another person as trustee for the transferor or a third person;

(3)  a property owner’s testamentary transfer to another
person as trustee for a third person;

(4)  an appointment under a power of appointment to another
person as trustee for the donee of the power or for a third person; or

(5)  a promise to another person whose rights under the
promise are to be held in trust for a third person.

Tex.
Prop. Code § 112.001; Nolana Dev. Ass’n v. Corsi, 682 S.W.2d 246, 249
(Tex. 1984).  A court has no authority to impose a trust unless the
prerequisites of a trust are satisfied.  Jones v. Blume, 196 S.W.3d 440,
448 (Tex. App.—Dallas 2006, pet. denied).  Similarly, a court cannot impose a
trust when the parties contemplated another relationship.  See Spiritas v.
Robinowitz, 544 S.W.2d 710, 715 (Tex. Civ. App.—Dallas 1976, writ ref’d
n.r.e.).  

Simply signing a
contract “as trustee” does not itself create a trust.  Nolana Dev. Ass’n,
682 S.W.2d at 249; Anzilotti, 899 S.W.2d at 268.  A party seeking to
escape personal liability under a contract by pleading he acted as a trustee
bears the burden of showing he was in fact a trustee and not simply trying to
evade liability by signing the contract “as trustee.”  Nolana Dev. Ass’n,
682 S.W.2d at 249; Anzilotti, 899 S.W.2d at 267–68.  

In Spiritas, the
parties formed a joint venture to purchase a tract of land.  544 S.W.2d at
713.  Robinowitz contributed his right under a contract of sale to purchase the
land, while Spiritas paid costs on closing the sale.  Id.  The parties
signed their agreement as “Spiritas, Trustee,” and “Robinowitz, Trustee,” and
the agreement also specified that title to the land would be taken in the name
of “Robinowitz, Trustee.”  Id.  Robinowitz would later attain a personal
loan and use the land as collateral, thereby placing a second lien on the
property.  Id. at 714.  When a bank eventually foreclosed on the lien,
Spiritas argued Robinowitz had no right to encumber the property.  

The bank argued that the
Blind Trust Act protected its second lien on the property, but the court found
the act inapplicable because a trust was never created.  Id. at 715.  The
court concluded, however, that mere “[d]esignation of a party as ‘trustee’ does
not in itself create a trust,” and that use of “trustee” in the deed was merely
descriptive and without legal effect.  Id. (citing Costello v.
Hillcrest State Bank, 380 S.W.2d 780, 782 (Tex. Civ. App.—Dallas 1964, no
writ).  Significantly, the court concluded that “the requirement that
Robinowitz take title as trustee does not show, with certainty, an intent that
the venture property be held in trust for the venture as distinguished from the
common situation in which one partner holds title for the benefit of the partnership.” 
Id.  

A similar case faced the
Texas Supreme Court in Nolana Development Association v. Corsi, in which
Nolana, a joint venture, sued the titleholder of property owned by the venture,
alleging that her failure to pay part of the mortgage resulted in foreclosure
and loss of the property.  682 S.W.2d at 248.  Corsi had taken title to the
joint venture’s property as trustee “for the mutual convenience of the
parties.”  Id.  Nolana argued Corsi breached her fiduciary relationship
as trustee of the property, but the court held Nolana had failed to create a
trust under any of the statutory provisions, noting that “the mere designation
of a party as ‘trustee’ does not create a trust.”  Id. at 248–49.  

Here, Stauffacher had
individual responsibilities under the joint-venture agreement related to the
logistics of facilitating the transfer of money to the investment program. 
These responsibilities included taking title to the funds invested by Coadum in
order to transfer the money to the investment program that would benefit Coadum
and LOBO, a company of which he was president.  Assigning these
responsibilities to a “trustee” does not, however, indicate intent to create a
formal trust under section 112.001 of the Property Code.  Rather, the
provisions of the joint-venture agreement more closely reflect the facts in Spiritas
and Nolana, in which courts concluded that placing title to partnership
assets for the logistical convenience of carrying out partnership business did
not create a formal trust.  

The document Stauffacher
argues created a trust is titled “Joint Venture Agreement.”  The first sentence
of the document describes the parties to the agreement as “joint venturers” who
“have agreed to and hereby undertake a joint venture for profit,” which is to
be achieved from an “asset investment program arranged by LOBO.”  The joint-venture
agreement does not describe the structure or existence of a trust, nor does it
name a settlor or beneficiary.  The responsibilities of the “trustee” are referred
to several times in the agreement, and Stauffacher argues that he was the
“trustee to facilitate the investment program.”  But the mere use of the term
“trustee” does not necessarily create a trust, and it did not do so here.

Furthermore,
Stauffacher’s actions following execution of the joint-venture agreement show a
lack of intent to create a trust.  Stauffacher signed a letter of intent with
Pureheart in his individual capacity requesting “participation in a private
banking opportunity through a private placement of said assets owned free and
clear by me.”  The signature line reads: “Signature of Individual on Behalf of
Himself.”  Stauffacher then signed a “Pay Out Account,” which authorized the
creation of an account into which the trade funds would be deposited.  The “Pay
Out Account” documentation includes the following language: “I, Raymond H.
Stauffacher, Jr., authorized signatory on behalf of myself, designate the
following account to receive the trade funds derived.”  Stauffacher signed the
document in his individual capacity.  He then entered into a joint-venture
agreement with Pureheart to manage investment of the funds.  Stauffacher signed
the joint-venture agreement “on behalf of himself,” and the agreement reads:
“Raymond H. Stauffacher, Jr., as represented by private placement signatory for
himself, agrees . . . .”  

We conclude as a matter
of law that none of the parties to the joint-venture agreement intended to
create a trust.  As a trust did not exist, there was sufficient evidence to
submit a question to the jury as to Stauffacher’s individual liability under
the contract, and there was sufficient evidence to enter a judgment on the
jury’s finding that Stauffacher failed to comply with the joint-venture
agreement.  Accordingly, the trial court did not abuse its discretion by
denying Stauffacher’s motions for a new trial and judgment notwithstanding the
verdict.  We overrule Stauffacher’s issues one, two, and four.  

III

In his fifth issue, Stauffacher argues the trial
court erred in failing to disregard the jury’s answer to Question 2-b because
there is no evidence or, alternatively, insufficient evidence to support a
finding of damages for breach of fiduciary duty.  We agree.  

In Question 2-a, the jury found Stauffacher breached
his fiduciary duty to Coadum, and in Question 2-b awarded $56,025 in damages
based on its finding in Question 2-a.  It is not clear from the record, and at
oral argument counsel was unable to speculate, what formed the basis for the
amount the jury awarded.  During closing argument at trial, Coadum’s counsel
asked the jury to award $1,015,000 in damages for Stauffacher’s breach of the
joint-venture agreement.  In justifying that amount, counsel argued the
following:

$415,000 was not returned.  And Mr. Repke testified that on
the very, very minimum amount, if he had taken the money and actually invested
it in less profitable programs, he would have yielded $600,000.  And so that
amount that we ask that you put into the answer for—for 1(c) is $1,015,000
even.

Notably, as a preface to his
suggestion of a damages amount for Question 1-c, counsel stated: “And these
will be the same damages for each of the questions.”  Subsequently, counsel
argued the following in support of his request that the jury answer “Yes” to
Question 2-a, the breach-of-fiduciary-duty question:

Confronted with the deposition, [Stauffacher] ultimately
testified that he discussed with Tom Repke that the planned security was, no
trading would happen until the bank issued stock in UBS’s name to Coadum.  The
stock was never issued.  Never issued.  But the trading started, which is why
the money is lost.  

Now the reason it was—the reason it was able to be traded
was because it was not set up in the sole control of the trustee.  So the
trader started trading.  And even worse, they were trading foreign currencies
which, under the definition of this agreement, was not even included in the
type of investments that were to be used.  It’s almost as if at every stage,
these gentlemen got it wrong.  

…

I think one of the most unbelievable parts of the testimony
in this case was that when the trustee, Ray Stauffacher, knew that there was a
problem, he didn’t tell Coadum.  Didn’t want to bother them, didn’t want to
irritate them.  Wanted to wait until he had good news.

…

When he got the money back, he didn’t want to bother them
with that either.  I mean, that’s unbelievable.  He has a duty to disclose
everything.  

The next question is 2(b), which is the damages, and
it’s the same amount, $1,015,000.

(emphasis added).  Counsel
essentially argued Stauffacher should pay damages for breach of his fiduciary
duty because he (1) failed to secure Coadum’s funds in an account only he could
access; (2) failed to secure the principal with bank-issued stock prior to use
of the principal for trading; (3) failed to report subsequent losses when
trading began; and (4) failed to inform Coadum that part of its principal had
been returned.  In its appellate brief, Coadum similarly argues that the separate
bases for breach-of-fiduciary-duty damages are that Stauffacher (1) falsely represented
to Coadum that the investment program would pay Coadum in the near future
despite having just theorized in an e-mail that everyone involved might suffer
substantial losses; (2) falsely represented to Coadum that it could rely on program
managers even after he had lost confidence in them; and (3) failed to inform
Coadum that the principal investment sum had been returned to him after Coadum
demanded it.

            What Coadum has
failed to articulate, both at trial and on appeal, is to what damages Coadum is
entitled separate from the economic damages awarded for breaching the joint-venture
agreement.  Coadum certainly put on evidence that Stauffacher breached a
fiduciary duty, if indeed one existed.  But Coadum put on no evidence to show
how it was damaged specifically by Stauffacher’s breach of fiduciary duty separate
from his failure to comply with the joint-venture agreement.  

Counsel’s request that the jury award “the same
amount” for both the breach-of-contract and breach-of-fiduciary-duty damages
questions belies the reality that the two questions were alternative theories
of the same case.  A party is generally entitled to present alternative
theories, but is not entitled to a double recovery.    Indeed, had the jury
complied with counsel’s request and awarded $1,015,000 under both questions,
Coadum would have been required to elect its remedy to avoid violating the
one-satisfaction rule.  See Stewart Title Guar. Co. v. Sterling, 822
S.W.2d 1, 7 (Tex. 1991) (acknowledging the one-satisfaction rule applies to
prevent a plaintiff from obtaining more than one recovery for the same
injury).    

Stauffacher argues the damages for breach of
fiduciary duty violate the economic- loss rule.  The economic-loss rule
generally precludes recovery in tort for economic losses resulting from the
failure of a party to perform under a contract.  Lamar Homes, Inc. v.
Mid-Continent Cas. Co., 242 S.W.3d 1, 12 (Tex. 2007).  When the only loss or
damage is to the subject matter of the contract, the plaintiff’s action is
ordinarily on the contract.  Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d
493, 494 (Tex. 1991).  Whether couched as a violation of the economic-loss rule
or simply as a lack of evidence to support the submission of a jury question,
the result is the same—Coadum put on no evidence of damages independent of
those suffered as a result of Stauffacher’s breach of the joint-venture
agreement.  Accordingly, there was no evidence upon which the jury could base
an award, and the trial court erred in failing to disregard the jury’s answer
to Question 2-b.  We sustain Stauffacher’s fifth issue.  

IV

Stauffacher’s third issue is that the trial court
erred in failing to disregard the jury’s answer to Question 2-a, concerning
whether Stauffacher failed to comply with his fiduciary duty to Coadum.  We do
not reach this issue; even if Stauffacher owed and breached a fiduciary duty to
Coadum, we have already determined in Stauffacher’s fifth issue that there were
no damages for breach of fiduciary duty separate from the economic losses
Coadum suffered under a breach-of-contract theory.  We therefore do not reach
Stauffacher’s third issue.   

* * *

            For the foregoing
reasons, we conclude as a matter of law that the joint-venture agreement
between Stauffacher and Coadum did not create a trust and overrule issues one,
two, and four.  We further conclude there is legally insufficient evidence to
support the award of damages for breach of fiduciary duty and sustain issue
five.  Accordingly, we modify the trial court’s judgment to delete the award of
damages and prejudgment interest for breach of fiduciary duty.  We affirm the
remainder of the judgment.    

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison.