NOLANA DEVELOPMENT ASSOCIATION, Petitioner,

v.

Ann R. CORSI, Trustee, Respondent.

No. C–3311.

Supreme Court of Texas.

Dec. 12, 1984.

**248**

Levbarg & McGowan, Mark Z. Levbarg, Austin, for petitioner.

Kazen & Ray, Hector Villarreal, Austin, for respondent.

SPEARS, Justice.

This case involves breach of contract to pay money and breach of fiduciary duty. Nolana Development Association, a joint venture, sued Ann Corsi, individually and as trustee, alleging that her failure to pay part of the mortgage on Nolana's lot resulted in the foreclosure and loss of the property. After a non-jury trial, the court awarded Nolana judgment for $750,000. Ann Corsi appealed, and the court of appeals reversed and rendered judgment that Nolana take nothing. 674 S.W.2d 874. We reverse the judgment of the court of appeals and, as modified, affirm the judgment of the trial court.

Nolana was a joint venture which in early 1977 was composed of Robert Conine, Lucille Hendricks and Lee Rogers. Nolana's only asset was a forty acre tract in Hidalgo County, which was subject to an outstanding note and lien of $140,000. On May 6, 1977, Rogers sold his interest in Nolana to Manny Corsi, Ann Corsi's husband. As part payment, Manny assumed Rogers' share of the indebtedness, but in order to pay the additional purchase price, the land was refinanced with a $189,000 note at Jefferson Savings & Loan Association. The original $140,000 note was retired, and the additional $49,000 went to Manny, which he used primarily to purchase Rogers' interest.

Title to Nolana's tract was placed in Ann Corsi's name as trustee for the mutual convenience of the parties. The $189,000 note was signed by Ann Corsi "as trustee," Robert Conine and Manny Corsi, but not by

Lucille Hendricks, even though she owned a one-third interest in Nolana. Only Ann Corsi "as trustee" signed the deed of trust on the property. The name "Nolana" does not appear on the note or the deed of trust.[1]

In a letter to Conine and Hendricks, dated May 6, 1977, Manny and Ann Corsi acknowledged that Conine, Hendricks, and the Corsis each owned one-third of the property, and the Corsis agreed to be solely responsible for the additional $49,000 as well as for one-third of the original $140,000 debt. Ann Corsi signed this letter without the designation "as trustee."

Manny died in December of 1977, and Ann was named Independent Executrix of his estate on August 2, 1978. She made no payments on the $189,000 note, and neither did Conine or Hendricks. By letters dated June 30, 1978, Jefferson informed the parties that the loan was in default and that foreclosure was imminent. Ann's attorney attempted to find a new partner to buy out Manny's interest, but the proposed investor was rejected by Conine and Hendricks. After concluding that Ann would not pay Manny's share of the note, Conine and Hendricks negotiated an arrangement whereby Jefferson would foreclose on the property, and later refinance and reconvey it, thus excluding Ann and her husband's estate. No one paid the note, and Jefferson foreclosed on November 7, 1978. Jefferson, the only bidder on the property, purchased it for $229,092.39, the amount of the outstanding indebtedness, including interest and penalties. Jefferson then sold the land for $980,000 to someone other than Conine and Hendricks.

On appeal Nolana presents two points of error. First, it argues that the court of appeals erred in holding that Ann Corsi breached no fiduciary duty as trustee of Nolana's real estate. Second, it argues that the court of appeals erred in not finding that Ann Corsi was individually liable for the damages caused by the foreclosure.

---

1. We offer no explanation why the parties conducted their business in this manner. We simply present these curious facts, gleaned from a very limited record.

Under the breach of fiduciary duty claim, Nolana argues that Ann Corsi either breached her duties as an express trustee or as a resulting trustee. The requisites of an express trust are provided by the Texas Trust Code (Tex.Prop.Code Ann. § 101.001 *et seq.* (Vernon 1984)); however, the new trust code provides that the prior Texas Trust Act (repealed 1984) governs the validity of trusts entered into while the act was in force. Tex.Prop.Code Ann. § 111.-006(2) (Vernon 1984). The Nolana trust transactions are governed by the Texas Trust Act which provided the following methods for establishing a valid express trust:

A. A declaration in writing by the owner of the property that he holds it as trustee for another person, or persons, or for himself and another person or persons; or

B. A written transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person or persons; or

C. A transfer by will by the owner of property to another person or persons as trustee for a third person or persons; provided that a natural person as trustee may be a beneficiary of any such trust.

D. An appointment by a person having a power of appointment to another person as trustee for the donee of the power or for a third person; or

E. A promise by a person to another person whose rights thereunder are to be held in trust for a third person; or

F. A beneficiary may be a co-trustee and the legal and equitable title to the trust estate shall not merge by reason thereof. * * *

Provided, however, that a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared:

1. By a written instrument subscribed by the trustor or by his agent thereunto duly authorized by writing;

2. By any other instrument under which the trustee claims the estate affected.

Texas Trust Act, ch. 148, § 7, 1943 Tex. Gen.Laws 232, 234, *as amended in* ch. 77, § 3, 1945 Tex.Gen.Laws 109, 110, *repealed by* Act of Jan. 1, 1984, ch. 576, § 6, 1983 Tex.Gen.Laws 3729, 3730 (Tex.Rev.Civ. Stat.Ann. article 7425b-7 (Vernon 1960)).

Nolana has not created an express trust under any of these provisions. Moreover, under the statute of frauds provision in subdivision F, a trust consisting of real property is invalid unless created by a written instrument signed by the trustor. The term "trustee" appears in conjunction with Ann's name on the note and deed of trust, but the mere designation of a party as "trustee" does not create a trust. *Fred Rizk Const. Co. v. Cousins Mortg. & Equity Investments,* 627 S.W.2d 753, 757 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Brelsford v. Scheltz,* 564 S.W.2d 404, 406 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Spiritas v. Robinowitz,* 544 S.W.2d 710, 715 (Tex.Civ.App. —Dallas 1976, writ ref'd n.r.e.); *Costello v. Hillcrest State Bank of University Park,* 380 S.W.2d 780, 782 (Tex.Civ.App.—Dallas 1964, no writ). "Nothing within article 7425b-7 includes a partnership agreement where one of the partners takes title to the partnership property in his name as 'trustee'." *Spiritas,* 544 S.W.2d at 715. There is no written instrument signed by the trustor establishing a trust in this case.

Even if a trust had been validly established under the Texas Trust Act, the record is devoid of any evidence describing Ann Corsi's duties and responsibilities as trustee. If a trustee is not given affirmative powers and duties, the trust is "passive" or "dry," and legal title is vested in the beneficiaries, not the named trustee. *Moore v. City of Waco,* 85 Tex. 206, 20 S.W. 61, 63 (1892); *Bohn v. Bohn,* 420 S.W.2d 165, 172 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ dism'd). *See Zahn v. National Bank of Commerce of Dallas,* 328 S.W.2d 783, 791 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.).

We are without proof of the trust or duties; therefore, we cannot hold under the

facts of this case that there has been a breach of fiduciary duty under an express trust theory.

■■■ Nolana next argues that the evidence is sufficient to establish a resulting trust. A resulting trust is implied in law when someone other than the person in whose name title is taken pays the purchase price, or when an express trust fails. *See Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127, 130 (1960); *Brelsford v. Scheltz*, 564 S.W.2d 404, 406 (Tex.Civ.App. —Houston [1st Dist.] 1978, writ ref'd n.r. e.); G. Bogert, *The Law of Trusts and Trustees* § 451 (Rev.2nd ed. 1977). The doctrine of resulting trust is invoked to prevent unjust enrichment, and equitable title will rest with the party furnishing the consideration or trust property when an express trust fails. The trustee of a resulting trust, however, like the trustee of a passive trust, generally is responsible only for conveying the property to the beneficiary or in accordance with his directions. *See Restatement (Second) of Trusts*, Ch. 12 Resulting Trusts General Principles (1957).

■■■ Although the title to the property was in Ann's name as trustee, she never attempted to claim the entire tract nor attempted to deny the interests of Conine and Hendricks. The resulting trust rationale of preventing unjust enrichment does not apply in this case. She recognized in the letter agreement that each had a one-third interest in the tract, and she has not been unjustly enriched by having the title in her name as trustee. We hold that Nolana is not entitled to money damages from Ann Corsi under a resulting trust theory.

■■■ Nolana argues in its second point of error that Ann should be held individually liable.[2] Ann signed a letter without the restriction "as trustee" in which she "acknowledge[d] and agree[d] to be solely responsible and pay the additional $49,000.00 plus interest thereon borrowed from Jeffer-

son Savings and Loan Association on May 6, 1977, and the proceeds of which were used to pay off the original $140,000.00 note described above." Although the consideration for Ann's signing the letter agreement is not apparent, it is presumed, as Ann has not raised the lack of consideration. *See* Tex.Rev.Civ.Stat.Ann. art. 27 (Vernon 1969); *Unthank v. Rippstein*, 386 S.W.2d 134, 138 (Tex.1964); *Cortez v. National Bank of Commerce of Brownsville*, 578 S.W.2d 476, 479 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■■■ Counsel for Nolana conceded in oral argument that under an individual liability theory, Ann could not be held responsible for the consequential lost profits resulting from foreclosure; therefore, Nolana is not entitled to lost profits. Corsi, Conine and Hendricks each owned a one-third interest in the property. The property sold for the outstanding indebtedness. Conine and Hendricks' interests in the property were thus burdened with two-thirds of the additional $49,000 and the interest and penalties thereon for which Corsi was solely liable. Corsi's interest satisfied the other one-third.

We therefore hold that Nolana is entitled to recover from Ann Corsi two-thirds of $49,000 in addition to two-thirds of the interest and penalties charged on the $49,-000. We reverse the judgment of the court of appeals, and as modified, affirm the judgment of the trial court.

■■■

---

**2.** Apparently Nolana did not sue Ann in her capacity as independent executrix. Nolana is trying to hold her personally responsible and is not trying to recover from Manny's estate.