# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00297-CV

**Fong Chun Huang and New Texas State Hotel, Inc., Appellants**

**v.**

**Board of Regents of the University of Texas System as Trustee of the Hogg Foundation–W.C. Hogg Memorial Fund, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. 455,130, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

This appeal arises out of a breach-of-contract suit filed by appellee the Board of Regents of the University of Texas System, as trustee of the Hogg Foundation–W.C. Hogg Memorial Fund ("the Board") against appellants Fong Chun Huang and the New Texas State Hotel, Inc. ("the Corporation"). Appellants raise fourteen issues on appeal. We will affirm in part and reverse and remand in part.

### Factual Background

In 1952, the Board acquired real property in downtown Houston that included the Texas State Hotel. In 1978, the Board leased the property to "David Askanase, Trustee for Texas State Hotel, Ltd., Debtor." According to the summary-judgment proof, Askanase was the trustee in Texas State Hotel's bankruptcy. After a number of assignments, the lease was assigned to Huang in early 1981. Huang signed the assignment as "trustee." Huang notified the Board he had taken over the lease as "trustee," but did not disclose the entity for which he was a trustee. Apparently, at

the time, the Board did not inquire. Huang did not pay rent from December 1985 through April 1986 and did not pay *ad valorem* taxes from January 1984 through April 1986. After correspondence related to the past-due rent and taxes, the Board terminated the lease on April 21, 1986. In a letter dated May 1, 1986, Huang's attorney represented to the Board that Huang had assigned the lease to the Corporation. However, James Wilson, Executive Director of the University of Texas System Real Estate Office, testified by affidavit that the Board never released Huang from his obligations under the lease. Wilson further stated that when the Board retook possession of the property, it was in very poor condition. Faced with substantial repairs, the Board decided it would be more economical to clean, board up, and maintain the building in a condition suitable for sale.

In December 1988, the Board sued Huang and the Corporation for breach of contract, alleging appellants had failed to pay five months of rent, *ad valorem* taxes, and utilities, and the Board had been forced to evict appellants and repair the property. Appellants filed a general denial in April 1989. The Corporation filed for bankruptcy in 1996. In October 2000, the Board filed a motion for summary judgment against Huang individually and as trustee. In November 2000, appellants filed their "Original Counterclaim," asserting the Board converted appellants' property and disposed of it unlawfully. In November and December, appellants filed amended answers, alleging Huang, acting as trustee for "Texas State Investments," transferred the lease to the Corporation, and arguing that Huang was not liable as an individual because he signed the lease in an official capacity as trustee. Appellants pleaded the defenses of laches, *res judicata*, and collateral estoppel; alleged the Board was barred from recovery by "the equitable doctrine of unclean hands," its failure to mitigate damages, and its election of remedies; alleged they were entitled to an offset due to the Board's conversion of

2

appellants' personal property; and sought to invoke a lease clause limiting damages. In February 2001, the Board filed a motion for summary judgment on appellants' counterclaim. The district court granted the Board's motions for summary judgment, dismissed appellants' counterclaim,[1] and awarded the Board $390,620 in damages against appellants. After a March hearing, the district court signed a final order awarding the Board $30,000 in attorney's fees.

In fourteen issues, appellants argue the district court's granting of summary judgment was erroneous because: the Board did not establish breach of contract by the Corporation, by Huang individually, or by Huang as trustee; the order granted more relief than was requested by the Board; the Board did not present any evidence as to its disposition of collateral belonging to appellants; appellants raised fact issues on their defenses of payment, election of remedies, offset, failure to mitigate, and estoppel; the district court misconstrued the lease; and the order awarded damages exceeding an amount specified in the lease.

### Summary Judgment as to the Corporation

In various issues on appeal, appellants contend (1) the Board did not establish a breach of contract by the Corporation, (2) the Board was not entitled to a deficiency judgment against the Corporation, and (3) the Board is estopped from seeking relief from the Corporation because it sent notice of termination only to Huang, not to the Corporation. Appellants also argue the order granted more relief than was requested, but do not give any explanation beyond that statement. Without

---

[1] The Board contended the counterclaim was barred by limitations. The district court granted the Board's motion, and appellants do not complain about the disposition of their counterclaim.

addressing the merits of those arguments, we hold that the district court erred in granting summary judgment against the Corporation.

The Board's motion sought summary judgment only against Huang, individually and as trustee. The motion did not address the Board's claims against the Corporation. There is no indication in the record that the Corporation had been non-suited or otherwise removed from the suit. To the contrary, in 1999 and 2000, the Board amended its petition, continuing to name the Corporation as a defendant, and alleged wrongdoing by the Corporation in its summary-judgment pleadings. Appellants filed pleadings and motions on behalf of Huang and the Corporation. In finding that the Board should recover from both Huang and the Corporation, the district court's judgment grants more relief than was requested by the Board and therefore is reversible insofar as it finds against the Corporation. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001).[2] We reverse the portion of the district court's judgment awarding the Board relief against the Corporation. We will confine our remaining review to the Board's claims against Huang.

---

[2] The supreme court recently clarified when a summary judgment is final and appealable. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001). The court held that an order is not final merely because it is titled a "final order" if, for instance, it does not dispose of cross-claims or all parties. *Id.* at 205. However, an order may erroneously be final and appealable if it grants more relief than was requested in a motion for summary judgment. *Id.* at 204. Although the Board's motion for summary judgment did not request relief against the Corporation, the district court's order explicitly granted relief against both Huang and the Corporation, the pleadings filed by the Board and appellants after the Board filed its initial motion for summary judgment indicate the parties believed the summary judgment concerned the Corporation, the parties behaved as if they believed the judgment was final, and on appeal the parties do not dispute the finality of the order granting summary judgment. *See id.* at 204-05.

4

**Huang's Liability as an Individual**

A plaintiff may sue a trustee individually if the trustee entered into a contract and did not exclude his personal liability. Tex. Prop. Code Ann. § 114.084(a) (West 1995); *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Nacol v. McNutt*, 797 S.W.2d 153, 155 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Adding "trustee" or "as trustee" after the trustee's signature to a contract is *prima facie* evidence of an intent to exclude the trustee from personal liability. Tex. Prop. Code Ann. § 114.084(b) (West 1995); *Anzilotti*, 899 S.W.2d at 267. However, simply signing a contract "as trustee" does not in itself create a trust. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984); *Anzilotti*, 899 S.W.2d at 268. A party seeking to escape personal liability under a contract by pleading he acted as a trustee bears the burden of showing he was in fact a trustee and not simply trying to evade liability by signing the contract "as trustee." *Anzilotti*, 899 S.W.2d at 267-68; *Nacol*, 797 S.W.2d at 155; *see Corsi*, 682 S.W.2d at 249 (parties did not introduce written instrument signed by trustee to establish existence of trust, no evidence of alleged trustee's duties and responsibilities).

An affidavit can be considered competent summary-judgment evidence if it is made on personal knowledge, sets forth facts that would be admissible in evidence, and shows that the person is competent to testify as to the matters stated in the affidavit. Tex. R. Civ. P. 166a(f); *Wiggins v. Overstreet*, 962 S.W.2d 198, 201 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Summary judgment may be based on an affidavit of an interested witness if the evidence is clear, positive and direct, credible and free from contradictions and inconsistencies, and may be readily controverted. Tex. R. Civ. P. 166a(c). A statement of subjective belief unsupported by other proof

5

is not competent summary-judgment evidence. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994); *Rizkallah v. Conner*, 952 S.W.2d 580, 586 (Tex. App.—Houston [1st Dist.] 1997, no writ). Nor are statements amounting to legal conclusions or unsupported factual conclusions proper evidence. *Ryland Group*, 924 S.W.2d at 122; *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Wiggins*, 962 S.W.2d at 201; *Rizkallah*, 952 S.W.2d at 587.

Huang filed affidavits in which he stated he was trustee for "Texas State Investments." He said he was assigned the lease in January 1981 and one month later assigned the lease to the Corporation. Huang averred that he notified the Board he accepted assignment of the lease "as a trustee" and never agreed to assume any obligations as an individual. All rent payments from February 1981 on were made by the Corporation. The Board never complained of the assignment and accepted all rent payments without objection. Huang said that no tax payments had been assessed in 1981 because the Board was tax exempt, and no taxes were assessed or paid until 1984. In 1985, the Board told Huang that he would have to pay "newly assessed property taxes on the property." Huang said he and the Corporation never expected to, nor would have agreed to, pay those taxes at the time they assumed the lease. Huang averred he explained the situation to Wilson and the Board, and the Board agreed to waive rent from December 1985 through April 1986 and to allow appellants to pay the 1984 and 1985 taxes "over an extended period of time." Huang stated the Board broke those promises and locked appellants out of the property. Huang averred that when the Board took over the property, it confiscated appellants' records and personal property worth over $400,000, and including 375 televisions, 600 beds, mattresses, and sets of linen, 350 dressers, night

6

stands, lamps, sofas, and mirrors, and other property. Huang said that appellants never received an accounting of the sale of the personal property and that the Board never leased the property again, instead leaving it boarded up and empty despite a taxable value of nearly four million dollars in 1986. In his deposition, Huang stated appellants paid the full $40,000 in unpaid rent "in the court."

The record contains scant evidence as to Huang's status as trustee. The Board produced the general warranty deed assigning the lease to "FONG-CHUN HUANG, TRUSTEE." Huang produced a "lease assignment" dated March 5, 1981, assigning the lease from Huang to the Corporation, which Huang signed as "trustee"; a letter dated May 1, 1986, from Huang's attorney to the Board, stating Huang, "individually and as trustee" assigned the sublease to the Corporation; appellants' answers to the Board's interrogatories, in which they stated Huang "executed the lease as a trustee only" and the trust was "a general partnership"; and several affidavits by Huang. In his affidavit, Huang states:

> As trustee for Texas State Investments, I was assigned a sublease from G.H. Texas Inc., in January of 1981. As trustee, I assigned the sublease to the New Texas State Hotel, Inc[.] one month later. All rental payments from February 1981 on were made by the New Texas State Hotel, Inc. There was never a complaint from the landlord, and they accepted all rent payments without objection. . . .
>
> I never agreed to assume this tax obligation either then or previously, individually, or as trustee of Texas State Investments, or on behalf of the New Texas State Hotel, Inc. . . .
>
> I never agreed to assume any obligations, either then or previously, individually. I only notified the landlord that the lease was subleased to me as trustee, and told them where they could contact me. One month later I assigned the sublease to the New Texas [S]tate Hotel, Inc.

Finally, Huang produced excerpts from his deposition that included the following exchange:

7

Question: In 1981 when you acted as trustee for Texas State Investments, what were the – what jobs did you perform for Texas State Investments as trustee?

Huang: I was assigned [to] execute the lease and then transfer the lease to the New Texas State Hotel.

Question: Did you have any other authority? Did you, for instance, have authority to sign checks for Texas State Investments?

Huang: I [did] have the right at that time, but after that is the [sic] Mr. Chao and Mr. Kao sign it.

Question: And I asked you about having income tax returns prepared for Texas State Investments, and you said you did at one time?

Huang: Right. One or – if they don't [sic] there, sometimes they maybe let me sign it.

Question: But what years did you have authority to prepare tax returns?

Huang: No, not I [sic] have the authority. The company give it to the CPA. The CPA, if they reach me or something. It's all in the Texas State someone [sic] sign it.

In his answer to the Board's interrogatories, Huang stated only that the trust was a general partnership; he did not give any further description or details about the trust. The Board sent appellants a request for production of documents, asking for "Documents of formation of Texas State Investments," "Initial by laws," "partnership list," "partnership changes," "meetings of partners," "business records," "distribution records," and "dissolution records." Appellants responded "none" to each request for documents. Huang did not produce any evidence showing he was in fact a trustee. The documents signed as "trustee" do show an attempt to exclude Huang from personal liability, but there is no evidence as to the trust's existence or structure. *See* Tex. Prop. Code Ann. § 114.084(b); *Corsi*, 682 S.W.2d at 249; *Anzilotti*, 899 S.W.2d at 267-68. The slight evidence

8

concerning Huang's duties as trustee, gleaned from his deposition excerpts, is vague, confusing, of no probative value, and insufficient to sustain Huang's burden of showing he was excluded from personal liability due to his alleged status as trustee. *See Corsi*, 682 S.W.2d at 249; *Anzilotti*, 899 S.W.2d at 267-68; *Nacol*, 797 S.W.2d at 155.

### Huang's Breach of the Lease

Huang argues that the Board did not establish that he breached the lease individually or as trustee. As discussed above, Huang did not sustain his burden of showing he was not individually liable because he acted solely as a trustee. Furthermore, aside from the bald assertion that the Board "did not establish as a matter of law a breach-of-contract claim against Appellant Fong Chun Huang Trustee," Huang does not provide any argument, authorities, or record references to support such contention, and therefore has waived those issues. *See* Tex. R. App. P. 38.1(h) (brief must contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

Huang argues he was not a party to the lease any later than one month after he assumed it in 1981 because his affidavit states he assigned the lease one month later and because he produced a "lease assignment" dated March 5, 1981, purporting to transfer the lease to the Corporation. However, Huang did not provide notice to the Board of any such assignment until one month after the Board terminated the lease in April 1986. The lease provides that any assignment is void unless the Board was given notice. At best, had the lease still been in effect, Huang's attempted assignment to the Corporation would have been valid in May 1986. Huang's attempt to assign the lease to the Corporation came too late to relieve him of responsibility to the Board under the lease.

9

Finally, Huang produced no evidence that rebuts the Board's showing that rent was not paid for a number of months, taxes were never paid except by the Board, and the property was left in damaged and poor condition following Huang's eviction. We hold the Board sufficiently established that Huang breached the lease. We overrule Huang's third and fourth issues.

**Issues Related to Deficiency Judgments**

In several issues, Huang argues that the Board was not entitled to a deficiency judgment because there was no evidence produced related to the disposition of his collateral. Huang further contends that he raised fact issues on the defenses of payment and offset, but provides no argument or authority to support those claims. Huang has waived those issues on appeal. *See* Tex. R. App. P. 38.1(h). Huang also argues that he raised fact issues as to the defense of election of remedies. However, even when Huang's brief is read most liberally to find argument and authorities in support of this issue, at most it contends that the Board through its election of remedies lost the opportunity to seek a deficiency judgment. We will address this issue only as it pertains to whether the Board sued for and received a deficiency judgment. Huang has waived any broader discussion of this issue. *See id.*

We need not consider whether the Board was entitled to a deficiency judgment because the Board did not sue Huang for a deficiency under the lease. It sued only for breach of the lease agreement. Any illegality or wrongdoing by the Board related to the disposition of Huang's collateral is irrelevant. *Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 681 (Tex. App.—Austin 2000, pet. denied); *see Myers v. Ginsburg*, 735 S.W.2d 600, 603-05 (Tex. App.—Dallas 1987, no writ). Any claims Huang had relating to the treatment of his collateral should have been raised in a

10

counterclaim for conversion. *See Myers*, 735 S.W.2d at 605. Huang did in fact bring a conversion counterclaim but brought it too late, and the district court granted summary judgment for the Board on the basis that the counterclaim was barred by limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2002) (two-year statute of limitations on conversion claims), § 16.069 (West 1997) (counterclaim may be brought even if barred by limitations if filed within thirty days of date original answer is due). Huang has not appealed the limitations-based summary judgment entered against his conversion counterclaim. We overrule Huang's fifth, sixth, eight, ninth, and tenth issues.

### Did the Board Have a Duty to Mitigate Its Damages?

In his eleventh issue, Huang contends he raised a fact issue as to his defense that the Board failed to mitigate its damages. In 1997, the supreme court held that a landlord has a duty to mitigate its damages when a tenant vacates a property in breach of the lease. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997). The tenant bears the burden of proving a failure to mitigate and the amount by which the landlord could have reduced its damages. *Id.*; *Stucki v. Noble*, 963 S.W.2d 776, 781 (Tex. App.—San Antonio 1998, pet. denied). Failure to mitigate is an affirmative defense. *Austin Hill Country Realty*, 948 S.W.2d at 300. A landlord has a duty to mitigate its damages only when the landlord maintains the lease in effect and sues for rent following a tenant's breach. *Id.* This is not the case here.

Here, the Board sought to recover damages for (1) past-due *not future* rent, (2) past-due taxes, (3) expenses related to Huang's eviction and the necessary relocation of his clients, and (4) damage done to the property and expenses incurred in repairing and maintaining the building in

11

a way determined to be most economical for the Board. The Board had no duty to mitigate those expenses by seeking another tenant for the property. *See id.* Nor did the Board have a duty to credit the sales price of the property to fees *already incurred* by Huang before the Board terminated the lease. Any arguments regarding whether the Board should have attempted to sell Huang's collateral and credit him with that amount are related to a possible conversion claim, not to the Board's motion for summary judgment for breach of contract. We overrule Huang's eleventh issue on appeal.

## May the Board Proceed Against Huang as an Individual?

In his twelfth issue, Huang argues the Board is estopped from asserting claims against the Corporation and against Huang as an individual because the Board sent notice of the lease termination only to Huang as trustee. We have held that summary judgment against the Corporation was not proper. As for whether the Board is estopped from proceeding against Huang as an individual, estoppel is an affirmative defense and a defendant bears the burden of establishing each element of that defense. Tex. R. Civ. P. 94; *see Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980) (defendant must prove affirmative defense); *Kirby Exploration Co. v. Mitchell Energy Corp.*, 701 S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (same). Estoppel arises where one party induces another to change his position for the worse. *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied). Quasi-estoppel prevents a party from repudiating an act if it would harm another who reasonably relied on the act. *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 136 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd). A party may not assert a right against another if it

12

would be inconsistent with the party's previous position. *Id.*; *Vessels*, 823 S.W.2d at 765-66. Such is not the case here.

Huang assumed the lease by signing as "trustee"; therefore the Board corresponded with him as "trustee." The Board then brought suit against Huang as trustee and as an individual and, when Huang failed to carry his burden of showing he acted as a trustee, the district court properly granted summary judgment against him as an individual. *See* Tex. Prop. Code Ann. § 114.084(a) (plaintiff may sue trustee in individual capacity if contract does not exclude personal liability). Huang has not shown that the Board induced him to change his position to his detriment, how the Board's suing him in an individual capacity is inconsistent with an earlier position, or that he reasonably relied on or would be harmed by a change in such a position. Huang received actual notice of the damages sought by the Board and breached the contract himself. Huang did not meet his burden of proving all the elements of his affirmative defense of estoppel. We overrule Huang's twelfth issue.

**Should Damages be Limited to $100,000?**

In his thirteenth and fourteenth issues, Huang argues that a clause in the lease limited the Board to recovering no more than $100,000. The Board sought and recovered damages amounting to $390,619.54, the sum total of: $40,000 in unpaid rent; $206,801.16 in taxes owed by appellants and paid by the Board; $35,733.13 in attorney's fees and costs related to the eviction proceeding; $10,845.25 for security during the eviction process; $67,798.60 to clean out, board up, maintain, and secure the property through January 1987; $6,515.10 for security from February 1987 until the property was sold; $1,042 in wages paid to keep the property running until appellants' clients were relocated; $12,230.31 in utilities paid during relocation and clean-up and prior to sale;

$3,211.99 in relocation costs for appellants' clients; $1,923.49 for miscellaneous expenses such as changing locks and inspection fees; and $4,518.51 in travel costs for Wilson and another Board employee to handle the eviction, clean-up, and sale.

The lease provides that "in the event of termination of this Lease, Lessee's liability for the balance of rentals due following such termination shall be limited to the sum of $100,000." The lease further provides that "[t]he terms 'rent' or 'rentals' as used . . . throughout this lease shall include all rental payments . . . as well as all other payments required to be made to Lessor in this lease." The lease states that taxes are to be paid directly to the taxing authorities in the Board's name. The lease also provides that the lessee shall pay for utilities and shall maintain the property in good repair. If the lessee does not maintain the property, the Board has the authority to "order and pay for same" and add those costs to the next month's rent. None of the damages awarded to the Board, with the exception of the past-due rent, was "rent" as defined and limited by the lease. The taxes were supposed to be paid by Huang directly to the taxing authorities, not to the Board. The Board incurred substantial costs in cleaning out the building, relocating Huang's clients, and securing the building until it was sold. In his affidavit, Wilson averred that when the Board evicted Huang, the property was in such a state of disrepair as to be untenable, thus making it more economical to board up and sell the property rather than try to lease it again. The lease clause related to repairs clearly contemplates repairs needed to maintain the property in "tenable condition" during the lease, not after termination, and the $67,798.60 involved emptying the property, hauling the contents to a garbage dump, boarding up the property, and maintaining it in a safe condition until it was sold. The damages awarded to the Board for "rentals" did not exceed $100,000. The district court did not err

in awarding the total damages of nearly $400,000. We overrule Huang's thirteenth and fourteenth issues.

## Conclusion

Having overruled all issues related to summary judgment against Huang, we affirm the district court's judgment awarding the Board damages against Huang individually and as trustee. We reverse the judgment as far as it awards damages against the Corporation and remand that portion of this cause to the district court.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: April 11, 2002

Do Not Publish