TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00297-CV






Fong Chun Huang and New Texas State Hotel, Inc., Appellants



v.



Board of Regents of the University of Texas System as Trustee of the Hogg


Foundation-W.C. Hogg Memorial Fund, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 455,13
0, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





 This appeal arises out of a breach-of-contract suit filed by appellee the Board of
Regents of the University of Texas System, as trustee of the Hogg Foundation-W.C. Hogg Memorial
Fund ("the Board") against appellants Fong Chun Huang and the New Texas State Hotel, Inc. ("the
Corporation"). Appellants raise fourteen issues on appeal. We will affirm in part and reverse and
remand in part.


Factual Background

 In 1952, the Board acquired real property in downtown Houston that included the
Texas State Hotel. In 1978, the Board leased the property to "David Askanase, Trustee for Texas
State Hotel, Ltd., Debtor." According to the summary-judgment proof, Askanase was the trustee in
Texas State Hotel's bankruptcy. After a number of assignments, the lease was assigned to Huang
in early 1981. Huang signed the assignment as "trustee." Huang notified the Board he had taken
over the lease as "trustee," but did not disclose the entity for which he was a trustee. Apparently,
at the time, the Board did not inquire. Huang did not pay rent from December 1985 through April
1986 and did not pay ad valorem taxes from January 1984 through April 1986. After
correspondence related to the past-due rent and taxes, the Board terminated the lease on April 21,
1986. In a letter dated May 1, 1986, Huang's attorney represented to the Board that Huang had
assigned the lease to the Corporation. However, James Wilson, Executive Director of the University
of Texas System Real Estate Office, testified by affidavit that the Board never released Huang from
his obligations under the lease. Wilson further stated that when the Board retook possession of the
property, it was in very poor condition. Faced with substantial repairs, the Board decided it would
be more economical to clean, board up, and maintain the building in a condition suitable for sale.

 In December 1988, the Board sued Huang and the Corporation for breach of contract,
alleging appellants had failed to pay five months of rent, ad valorem taxes, and utilities, and the
Board had been forced to evict appellants and repair the property. Appellants filed a general denial
in April 1989. The Corporation filed for bankruptcy in 1996. In October 2000, the Board filed a
motion for summary judgment against Huang individually and as trustee. In November 2000,
appellants filed their "Original Counterclaim," asserting the Board converted appellants' property
and disposed of it unlawfully. In November and December, appellants filed amended answers,
alleging Huang, acting as trustee for "Texas State Investments," transferred the lease to the
Corporation, and arguing that Huang was not liable as an individual because he signed the lease in
an official capacity as trustee. Appellants pleaded the defenses of laches, res judicata, and collateral
estoppel; alleged the Board was barred from recovery by "the equitable doctrine of unclean hands,"
its failure to mitigate damages, and its election of remedies; alleged they were entitled to an offset
due to the Board's conversion of appellants' personal property; and sought to invoke a lease clause
limiting damages. In February 2001, the Board filed a motion for summary judgment on appellants'
counterclaim. The district court granted the Board's motions for summary judgment, dismissed
appellants' counterclaim, (1) and awarded the Board $390,620 in damages against appellants. After
a March hearing, the district court signed a final order awarding the Board $30,000 in attorney's fees.

 In fourteen issues, appellants argue the district court's granting of summary judgment
was erroneous because: the Board did not establish breach of contract by the Corporation, by Huang
individually, or by Huang as trustee; the order granted more relief than was requested by the Board;
the Board did not present any evidence as to its disposition of collateral belonging to appellants;
appellants raised fact issues on their defenses of payment, election of remedies, offset, failure to
mitigate, and estoppel; the district court misconstrued the lease; and the order awarded damages
exceeding an amount specified in the lease.


Summary Judgment as to the Corporation

 In various issues on appeal, appellants contend (1) the Board did not establish a
breach of contract by the Corporation, (2) the Board was not entitled to a deficiency judgment
against the Corporation, and (3) the Board is estopped from seeking relief from the Corporation
because it sent notice of termination only to Huang, not to the Corporation. Appellants also argue
the order granted more relief than was requested, but do not give any explanation beyond that
statement. Without addressing the merits of those arguments, we hold that the district court erred
in granting summary judgment against the Corporation.

 The Board's motion sought summary judgment only against Huang, individually and
as trustee. The motion did not address the Board's claims against the Corporation. There is no
indication in the record that the Corporation had been non-suited or otherwise removed from the suit. 
To the contrary, in 1999 and 2000, the Board amended its petition, continuing to name the
Corporation as a defendant, and alleged wrongdoing by the Corporation in its summary-judgment
pleadings. Appellants filed pleadings and motions on behalf of Huang and the Corporation. In
finding that the Board should recover from both Huang and the Corporation, the district court's
judgment grants more relief than was requested by the Board and therefore is reversible insofar as
it finds against the Corporation. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 204 (Tex. 2001). (2) 
We reverse the portion of the district court's judgment awarding the Board relief against the
Corporation. We will confine our remaining review to the Board's claims against Huang.

Huang's Liability as an Individual

 A plaintiff may sue a trustee individually if the trustee entered into a contract and did
not exclude his personal liability. Tex. Prop. Code Ann. § 114.084(a) (West 1995); Anzilotti v. Gene
D. Liggin, Inc., 899 S.W.2d 264, 267 (Tex. App.--Houston [14th Dist.] 1995, no writ); Nacol v.
McNutt, 797 S.W.2d 153, 155 (Tex. App.--Houston [14th Dist.] 1990, writ denied). Adding
"trustee" or "as trustee" after the trustee's signature to a contract is prima facie evidence of an intent
to exclude the trustee from personal liability. Tex. Prop. Code Ann. § 114.084(b) (West 1995);
Anzilotti, 899 S.W.2d at 267. However, simply signing a contract "as trustee" does not in itself
create a trust. Nolana Dev. Ass'n v. Corsi, 682 S.W.2d 246, 249 (Tex. 1984); Anzilotti, 899 S.W.2d
at 268. A party seeking to escape personal liability under a contract by pleading he acted as a trustee
bears the burden of showing he was in fact a trustee and not simply trying to evade liability by
signing the contract "as trustee." Anzilotti, 899 S.W.2d at 267-68; Nacol, 797 S.W.2d at 155; see
Corsi, 682 S.W.2d at 249 (parties did not introduce written instrument signed by trustee to establish
existence of trust, no evidence of alleged trustee's duties and responsibilities).

 An affidavit can be considered competent summary-judgment evidence if it is made
on personal knowledge, sets forth facts that would be admissible in evidence, and shows that the
person is competent to testify as to the matters stated in the affidavit. Tex. R. Civ. P. 166a(f);
Wiggins v. Overstreet, 962 S.W.2d 198, 201 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). 
Summary judgment may be based on an affidavit of an interested witness if the evidence is clear,
positive and direct, credible and free from contradictions and inconsistencies, and may be readily
controverted. Tex. R. Civ. P. 166a(c). A statement of subjective belief unsupported by other proof
is not competent summary-judgment evidence. Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122
(Tex. 1996); Texas Div.-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994); Rizkallah v.
Conner, 952 S.W.2d 580, 586 (Tex. App.--Houston [1st Dist.] 1997, no writ). Nor are statements
amounting to legal conclusions or unsupported factual conclusions proper evidence. Ryland Group,
924 S.W.2d at 122; Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991); Brownlee v. Brownlee, 665
S.W.2d 111, 112 (Tex. 1984); Wiggins, 962 S.W.2d at 201; Rizkallah, 952 S.W.2d at 587.

 Huang filed affidavits in which he stated he was trustee for "Texas State
Investments." He said he was assigned the lease in January 1981 and one month later assigned the
lease to the Corporation. Huang averred that he notified the Board he accepted assignment of the
lease "as a trustee" and never agreed to assume any obligations as an individual. All rent payments
from February 1981 on were made by the Corporation. The Board never complained of the
assignment and accepted all rent payments without objection. Huang said that no tax payments had
been assessed in 1981 because the Board was tax exempt, and no taxes were assessed or paid until
1984. In 1985, the Board told Huang that he would have to pay "newly assessed property taxes on
the property." Huang said he and the Corporation never expected to, nor would have agreed to, pay
those taxes at the time they assumed the lease. Huang averred he explained the situation to Wilson
and the Board, and the Board agreed to waive rent from December 1985 through April 1986 and to
allow appellants to pay the 1984 and 1985 taxes "over an extended period of time." Huang stated
the Board broke those promises and locked appellants out of the property. Huang averred that when
the Board took over the property, it confiscated appellants' records and personal property worth over
$400,000, and including 375 televisions, 600 beds, mattresses, and sets of linen, 350 dressers, night
stands, lamps, sofas, and mirrors, and other property. Huang said that appellants never received an
accounting of the sale of the personal property and that the Board never leased the property again,
instead leaving it boarded up and empty despite a taxable value of nearly four million dollars in
1986. In his deposition, Huang stated appellants paid the full $40,000 in unpaid rent "in the court."

 The record contains scant evidence as to Huang's status as trustee. The Board
produced the general warranty deed assigning the lease to "FONG-CHUN HUANG, TRUSTEE." 
Huang produced a "lease assignment" dated March 5, 1981, assigning the lease from Huang to the
Corporation, which Huang signed as "trustee"; a letter dated May 1, 1986, from Huang's attorney
to the Board, stating Huang, "individually and as trustee" assigned the sublease to the Corporation;
appellants' answers to the Board's interrogatories, in which they stated Huang "executed the lease
as a trustee only" and the trust was "a general partnership"; and several affidavits by Huang. In his
affidavit, Huang states:


As trustee for Texas State Investments, I was assigned a sublease from G.H. Texas
Inc., in January of 1981. As trustee, I assigned the sublease to the New Texas State
Hotel, Inc[.] one month later. All rental payments from February 1981 on were made
by the New Texas State Hotel, Inc. There was never a complaint from the landlord,
and they accepted all rent payments without objection. . . . 


I never agreed to assume this tax obligation either then or previously, individually,
or as trustee of Texas State Investments, or on behalf of the New Texas State Hotel,
Inc. . . . 


I never agreed to assume any obligations, either then or previously, individually. I
only notified the landlord that the lease was subleased to me as trustee, and told them
where they could contact me. One month later I assigned the sublease to the New
Texas [S]tate Hotel, Inc.



Finally, Huang produced excerpts from his deposition that included the following exchange:


Question: In 1981 when you acted as trustee for Texas State Investments, what were
the - what jobs did you perform for Texas State Investments as trustee?


Huang: I was assigned [to] execute the lease and then transfer the lease to the New
Texas State Hotel.


Question: Did you have any other authority? Did you, for instance, have authority
to sign checks for Texas State Investments?


Huang: I [did] have the right at that time, but after that is the [sic] Mr. Chao and Mr.
Kao sign it.


Question: And I asked you about having income tax returns prepared for Texas State
Investments, and you said you did at one time?


Huang: Right. One or - if they don't [sic] there, sometimes they maybe let me sign
it.


Question: But what years did you have authority to prepare tax returns?


Huang: No, not I [sic] have the authority. The company give it to the CPA. The
CPA, if they reach me or something. It's all in the Texas State someone [sic] sign
it.



 In his answer to the Board's interrogatories, Huang stated only that the trust was a
general partnership; he did not give any further description or details about the trust. The Board sent
appellants a request for production of documents, asking for "Documents of formation of Texas State
Investments," "Initial by laws," "partnership list," "partnership changes," "meetings of partners,"
"business records," "distribution records," and "dissolution records." Appellants responded "none"
to each request for documents. Huang did not produce any evidence showing he was in fact a
trustee. The documents signed as "trustee" do show an attempt to exclude Huang from personal
liability, but there is no evidence as to the trust's existence or structure. See Tex. Prop. Code Ann.
§ 114.084(b); Corsi, 682 S.W.2d at 249; Anzilotti, 899 S.W.2d at 267-68. The slight evidence
concerning Huang's duties as trustee, gleaned from his deposition excerpts, is vague, confusing, of
no probative value, and insufficient to sustain Huang's burden of showing he was excluded from
personal liability due to his alleged status as trustee. See Corsi, 682 S.W.2d at 249; Anzilotti, 899
S.W.2d at 267-68; Nacol, 797 S.W.2d at 155.


Huang's Breach of the Lease

 Huang argues that the Board did not establish that he breached the lease individually
or as trustee. As discussed above, Huang did not sustain his burden of showing he was not
individually liable because he acted solely as a trustee. Furthermore, aside from the bald assertion
that the Board "did not establish as a matter of law a breach-of-contract claim against Appellant
Fong Chun Huang Trustee," Huang does not provide any argument, authorities, or record references
to support such contention, and therefore has waived those issues. See Tex. R. App. P. 38.1(h) (brief
must contain "clear and concise argument for the contentions made, with appropriate citations to
authorities and to the record").

 Huang argues he was not a party to the lease any later than one month after he
assumed it in 1981 because his affidavit states he assigned the lease one month later and because he
produced a "lease assignment" dated March 5, 1981, purporting to transfer the lease to the
Corporation. However, Huang did not provide notice to the Board of any such assignment until one
month after the Board terminated the lease in April 1986. The lease provides that any assignment
is void unless the Board was given notice. At best, had the lease still been in effect, Huang's
attempted assignment to the Corporation would have been valid in May 1986. Huang's attempt to
assign the lease to the Corporation came too late to relieve him of responsibility to the Board under
the lease.

 Finally, Huang produced no evidence that rebuts the Board's showing that rent was
not paid for a number of months, taxes were never paid except by the Board, and the property was
left in damaged and poor condition following Huang's eviction. We hold the Board sufficiently
established that Huang breached the lease. We overrule Huang's third and fourth issues.


Issues Related to Deficiency Judgments

 In several issues, Huang argues that the Board was not entitled to a deficiency
judgment because there was no evidence produced related to the disposition of his collateral. Huang
further contends that he raised fact issues on the defenses of payment and offset, but provides no
argument or authority to support those claims. Huang has waived those issues on appeal. See Tex.
R. App. P. 38.1(h). Huang also argues that he raised fact issues as to the defense of election of
remedies. However, even when Huang's brief is read most liberally to find argument and authorities
in support of this issue, at most it contends that the Board through its election of remedies lost the
opportunity to seek a deficiency judgment. We will address this issue only as it pertains to whether
the Board sued for and received a deficiency judgment. Huang has waived any broader discussion
of this issue. See id.

 We need not consider whether the Board was entitled to a deficiency judgment
because the Board did not sue Huang for a deficiency under the lease. It sued only for breach of the
lease agreement. Any illegality or wrongdoing by the Board related to the disposition of Huang's
collateral is irrelevant. Cadle Co. v. Regency Homes, Inc., 21 S.W.3d 670, 681 (Tex. App.--Austin
2000, pet. denied); see Myers v. Ginsburg, 735 S.W.2d 600, 603-05 (Tex. App.--Dallas 1987, no
writ). Any claims Huang had relating to the treatment of his collateral should have been raised in
a counterclaim for conversion. See Myers, 735 S.W.2d at 605. Huang did in fact bring a conversion
counterclaim but brought it too late, and the district court granted summary judgment for the Board
on the basis that the counterclaim was barred by limitations. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.003(a) (West Supp. 2002) (two-year statute of limitations on conversion claims), § 16.069
(West 1997) (counterclaim may be brought even if barred by limitations if filed within thirty days
of date original answer is due). Huang has not appealed the limitations-based summary judgment
entered against his conversion counterclaim. We overrule Huang's fifth, sixth, eight, ninth, and tenth
issues.


Did the Board Have a Duty to Mitigate Its Damages?

 In his eleventh issue, Huang contends he raised a fact issue as to his defense that the
Board failed to mitigate its damages. In 1997, the supreme court held that a landlord has a duty to
mitigate its damages when a tenant vacates a property in breach of the lease. Austin Hill Country
Realty, Inc. v. Palisades Plaza, Inc., 948 S.W.2d 293, 299 (Tex. 1997). The tenant bears the burden
of proving a failure to mitigate and the amount by which the landlord could have reduced its
damages. Id.; Stucki v. Noble, 963 S.W.2d 776, 781 (Tex. App.--San Antonio 1998, pet. denied). 
Failure to mitigate is an affirmative defense. Austin Hill Country Realty, 948 S.W.2d at 300. A
landlord has a duty to mitigate its damages only when the landlord maintains the lease in effect and
sues for rent following a tenant's breach. Id. This is not the case here.

 Here, the Board sought to recover damages for (1) past-due not future rent, (2) past-due taxes, (3) expenses related to Huang's eviction and the necessary relocation of his clients, and
(4) damage done to the property and expenses incurred in repairing and maintaining the building in
a way determined to be most economical for the Board. The Board had no duty to mitigate those
expenses by seeking another tenant for the property. See id. Nor did the Board have a duty to credit
the sales price of the property to fees already incurred by Huang before the Board terminated the
lease. Any arguments regarding whether the Board should have attempted to sell Huang's collateral
and credit him with that amount are related to a possible conversion claim, not to the Board's motion
for summary judgment for breach of contract. We overrule Huang's eleventh issue on appeal.


May the Board Proceed Against Huang as an Individual?

 In his twelfth issue, Huang argues the Board is estopped from asserting claims against
the Corporation and against Huang as an individual because the Board sent notice of the lease
termination only to Huang as trustee. We have held that summary judgment against the Corporation
was not proper. As for whether the Board is estopped from proceeding against Huang as an
individual, estoppel is an affirmative defense and a defendant bears the burden of establishing each
element of that defense. Tex. R. Civ. P. 94; see Brown v. American Transfer & Storage Co., 601
S.W.2d 931, 936 (Tex. 1980) (defendant must prove affirmative defense); Kirby Exploration Co.
v. Mitchell Energy Corp., 701 S.W.2d 922, 926 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd
n.r.e.) (same). Estoppel arises where one party induces another to change his position for the worse. 
Vessels v. Anschutz Corp., 823 S.W.2d 762, 765 (Tex. App.--Texarkana 1992, writ denied). Quasi-estoppel prevents a party from repudiating an act if it would harm another who reasonably relied on
the act. Cook Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 136 (Tex. App.--Houston
[14th Dist.] 2000, pet. dism'd). A party may not assert a right against another if it would be
inconsistent with the party's previous position. Id.; Vessels, 823 S.W.2d at 765-66. Such is not the
case here.

 Huang assumed the lease by signing as "trustee"; therefore the Board corresponded
with him as "trustee." The Board then brought suit against Huang as trustee and as an individual
and, when Huang failed to carry his burden of showing he acted as a trustee, the district court
properly granted summary judgment against him as an individual. See Tex. Prop. Code Ann.
§ 114.084(a) (plaintiff may sue trustee in individual capacity if contract does not exclude personal
liability). Huang has not shown that the Board induced him to change his position to his detriment,
how the Board's suing him in an individual capacity is inconsistent with an earlier position, or that
he reasonably relied on or would be harmed by a change in such a position. Huang received actual
notice of the damages sought by the Board and breached the contract himself. Huang did not meet
his burden of proving all the elements of his affirmative defense of estoppel. We overrule Huang's
twelfth issue. 


Should Damages be Limited to $100,000?

 In his thirteenth and fourteenth issues, Huang argues that a clause in the lease limited
the Board to recovering no more than $100,000. The Board sought and recovered damages
amounting to $390,619.54, the sum total of: $40,000 in unpaid rent; $206,801.16 in taxes owed by
appellants and paid by the Board; $35,733.13 in attorney's fees and costs related to the eviction
proceeding; $10,845.25 for security during the eviction process; $67,798.60 to clean out, board up,
maintain, and secure the property through January 1987; $6,515.10 for security from February 1987
until the property was sold; $1,042 in wages paid to keep the property running until appellants'
clients were relocated; $12,230.31 in utilities paid during relocation and clean-up and prior to sale;
$3,211.99 in relocation costs for appellants' clients; $1,923.49 for miscellaneous expenses such as
changing locks and inspection fees; and $4,518.51 in travel costs for Wilson and another Board
employee to handle the eviction, clean-up, and sale.

 The lease provides that "in the event of termination of this Lease, Lessee's liability
for the balance of rentals due following such termination shall be limited to the sum of $100,000." 
The lease further provides that "[t]he terms 'rent' or 'rentals' as used . . . throughout this lease shall
include all rental payments . . . as well as all other payments required to be made to Lessor in this
lease." The lease states that taxes are to be paid directly to the taxing authorities in the Board's
name. The lease also provides that the lessee shall pay for utilities and shall maintain the property
in good repair. If the lessee does not maintain the property, the Board has the authority to "order and
pay for same" and add those costs to the next month's rent. None of the damages awarded to the
Board, with the exception of the past-due rent, was "rent" as defined and limited by the lease. The
taxes were supposed to be paid by Huang directly to the taxing authorities, not to the Board. The
Board incurred substantial costs in cleaning out the building, relocating Huang's clients, and
securing the building until it was sold. In his affidavit, Wilson averred that when the Board evicted
Huang, the property was in such a state of disrepair as to be untenable, thus making it more
economical to board up and sell the property rather than try to lease it again. The lease clause related
to repairs clearly contemplates repairs needed to maintain the property in "tenable condition" during
the lease, not after termination, and the $67,798.60 involved emptying the property, hauling the
contents to a garbage dump, boarding up the property, and maintaining it in a safe condition until
it was sold. The damages awarded to the Board for "rentals" did not exceed $100,000. The district
court did not err in awarding the total damages of nearly $400,000. We overrule Huang's thirteenth
and fourteenth issues.


Conclusion

 Having overruled all issues related to summary judgment against Huang, we affirm
the district court's judgment awarding the Board damages against Huang individually and as trustee. 
We reverse the judgment as far as it awards damages against the Corporation and remand that
portion of this cause to the district court.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: April 11, 2002

Do Not Publish

1. The Board contended the counterclaim was barred by limitations. The district court granted
the Board's motion, and appellants do not complain about the disposition of their counterclaim.
2. The supreme court recently clarified when a summary judgment is final and appealable. See
Lehmann v. Har-Con Corp., 39 S.W.3d 191 (Tex. 2001). The court held that an order is not final
merely because it is titled a "final order" if, for instance, it does not dispose of cross-claims or all
parties. Id. at 205. However, an order may erroneously be final and appealable if it grants more relief
than was requested in a motion for summary judgment. Id. at 204. Although the Board's motion
for summary judgment did not request relief against the Corporation, the district court's order
explicitly granted relief against both Huang and the Corporation, the pleadings filed by the Board
and appellants after the Board filed its initial motion for summary judgment indicate the parties
believed the summary judgment concerned the Corporation, the parties behaved as if they believed
the judgment was final, and on appeal the parties do not dispute the finality of the order granting
summary judgment. See id. at 204-05.